**GRASTY v. WOOD.**

**No. 12179.**

Court of Civil Appeals of Texas.
Galveston.

April 27, 1950.

Rehearing Denied June 1, 1950.

James D. Smullen, Houston, Charles Ingram, Wharton and Smead & Harbour, Longview, Butler, Binion, Rice & Cook, Houston, of counsel, for appellant.

George Prendergast, Marshall and M. S. Munson, Jr., Wharton, for appellee.

CODY, Justice.

This suit was filed by appellee against appellant in the form of a trespass to try title action to a one-fourth interest in that certain overriding royalty interest in and to all of the oil, gas, casinghead gas, distillate and other minerals, produced from Lot No. 4, in Block No. 5, of the Town of Lane City, Wharton County, Texas, which said overriding royalty, same being a 1/4th of 7/8ths, was reserved in a transfer from Gordon C. Grasty et al. to Scurlock Oil Company, recorded in Volume 212, page 540, of the Deed Records of Wharton County, Texas. In the alternative, so far as is important on appeal, appellee sought to have the above-described property impressed with a trust, by construction of equity, or to have a resulting trust declared herein, for appellee's benefit, alleging in that connection:

That about May 20, 1948, appellee and appellant entered into a verbal contract, under the terms of which appellee furnished appellant with the sum of $2,500, which

appellant agreed to use to purchase oil or mineral leases or rights located in Wharton County. That by the terms of the agreement, appellant was to be guided by his judgment as to the properties which he should acquire, and was either to retain or dispose thereof. That the profits so made, if any, would be first used to reimburse appellee for the $2,500, and the remainder realized from said transactions was to be divided equally between appellant and appellee.

That among the oil properties acquired by appellant, acting under said agreement, and using said sum of $2,500, was an oil or mineral lease on Lot 4, Block 5 of the Town of Lane City. That appellant and others made a drilling contract with Scurlock Oil Company under an assignment by the terms of which appellant reserved to himself, and retained out of the 7/8ths working interest, an equal 1/8th free overriding royalty in and to the oil, gas, casinghead gas and distillate produced from said Lot 4, Block 5. That a well was brought in by said Oil Company under said drilling contract, and appellant has received from said Oil Company the royalty payments provided for by the terms of the aforesaid assignment, the amounts of which are to appellant, but not to appellee, well known.

Appellee's petition concluded with a prayer for the fee simple title to 1/16th of the royalty interest, etc., and for half of the sum received by appellant on that account, and prayed for general relief in law and in equity.

So far as need be noted on appeal, appellant's answer consisted of a special exception and a general denial, the special exception being to the effect that the mineral leases and mineral interest referred to in appellee's pleadings is not described sufficiently to enable appellant to prepare his defense against the claims asserted by appellee in that "neither the land alleged covered, or the grantor, grantee, date or recording date is shown". The special exception was duly urged, and by the court overruled.

The court, trying the case without a jury, rendered judgment for appellee which, so far as need be noticed on appeal, provided that appellee should recover an undivided 1/16th of 7/8ths overriding royalty, etc., so long as the well flows under its own pressure. But that, when any well on the lease goes under artificial lift, the undivided 1/16th interest with respect to said well will be reduced to 1/32nd of 7/8ths overriding royalty as so provided in the aforesaid assignment. The judgment then reads: "The interest herein described and recovered by S. E. Wood, Jr., is 1/2 of the interest retained by Gordon C. Grasty as evidenced by an assignment from Gordon C. Grasty and Ross Walker to Scurlock Oil Company dated January 21, 1949". " * * * that the interest herein recovered above described by S. E. Wood, Jr., shall take effect as of May 20, 1949. * * * "

Appellant predicates his appeal upon two points, to the effect that the court erred in rendering judgment for appellee (a) because appellee failed to establish title in himself, and (b) because the burden is on appellee to introduce evidence to prove his title.

Before discussing said points, it is essential to note these facts:

It is not disputed that on May 20, 1948, appellant and one Ross Walker were engaged in acquiring mineral interests in and around Lane City, Wharton County; nor that appellant called appellee by long distance phone and asked him for $2,500, and that appellee agreed to advance said sum to appellant, and that appellant drew a draft for said amount which appellee duly honored. The parties were in disagreement at the trial as to what properties acquired by appellant that appellee was, by the terms of the agreement, to share in. It was appellant's contention that the agreement between him and appellee in connection with said $2,500 deal was that appellee was to get for said sum an undivided half of appellant's interest, which he acquired with Walker in Blocks 66, 67 and 68, Lane City; and, further that from any profits made thereon appellee was first to be paid back his $2,500, and that thereafter appellee would share in said blocks or any profits made therefrom equally with appellant. So far as the judgment rendered by the court below relates to said Blocks 66, 67 and 68, appellant has not appealed, and we re-

frain from burdening this opinion, further with reference to said Blocks 66, 67 and 68.

■ However, appellant and Walker, at the time in question, also acquired a mineral lease on Lot 4, Block 5 of Lane City. And the evidence was ample to support the allegations of appellee's pleadings to the effect that appellant's part of the consideration therefor (said Walker paying half) was paid from the $2,500, and that the agreement between appellant and appellee covered said transaction. And, as indicated above, the court rendered judgment which was consistent only with the conclusion that he found from the evidence, that appellee's allegations relating to the agreement, and what was done thereunder, was proved.

■ We overrule appellant's points. If the state of facts alleged and proved by appellee were such as authorized the court to subject appellant's legal title to the undivided 1/16th overriding royalty (which reduced to an undivided 1/32nd, when the well went under an artificial lift to produce) to the extent of one-half thereof, appellee was not required to establish that appellant held the paramount legal title thereto. Leakey v. Gunter, 25 Tex. 400, 403. And it is also well settled "that trusts in lands, as well as those which are created by express contract as those which are implied and result by construction of law, are not within the provisions of the statute of frauds and consequently need not be evidenced in writing." Id.

■ No matter how evidenced, the interest which appellee sought to have subjected to a trust in appellant's hands could not have been reached by an action in trespass to try title, which is possessory in its nature. This, because appellee's pleadings and proof showed that appellant, acting as he had the right to do, conveyed or transferred the leasehold out of which he and Mr. Walker carved or reserved the overriding royalty, to the Scurlock Oil Company, which alone then had the right to operate the lease, and for that purpose, the exclusive right of possession. In a word, the leasehold interest, out of which the overriding royalty interest was carved, with the possessory rights thereunder, was admittedly vested in the Scurlock Oil Company, which operated the lease. So the lease, and the possessory rights thereunder, formed no part of appellee's cause of action.

The testimony of both Mr. Walker, the co-owner of the legal title to the reserved overriding royalty interest, and of appellant established that the leasehold interest, out of which the overriding royalty was carved, was created by an instrument in writing, and that the said lease was transferred in writing to the Scurlock Oil Company, and that by the terms of the transfer an overriding royalty of 1/8th of 7/8ths was reserved (which reduced when the well or wells were put to artificial lift). Neither the lease nor the transfer thereof are shown in the statement of facts, and apparently were not introduced in evidence. The inference is natural that the parties each had copies of these instruments at the trial. But however that may be, appellant makes no contention that he objected to the testimony that the instruments in question were the best evidence of their contents. And for the purposes of this case, we must hold that appellee established by competent evidence that Mr. Walker and appellant were co-owners of the legal title to an overriding royalty of 1/8th of the 7/8ths. Nor do we understand that appellant contends otherwise.

The evidence was sufficient to support the conclusion, if it did not compel it, that appellant used a sufficient portion out of the $2,500 which he received from appellee to pay his one-half of the consideration which was paid by him and Mr. Walker for the lease, out of which the overriding royalty was carved. The evidence was sufficient to support the court's presumed finding that the allegations of appellee as to the verbal contract made about May 20, 1948, were true and that pursuant to said contract appellee advanced $2,500 to appellant which appellant agreed to use to purchase oil rights in Wharton County, etc.; and that among the properties purchased by appellant with said $2,500 was the oil and gas lease which he and Mr. Walker transferred as aforesaid. The sole question is whether the allegations of appellee's petition, which the evidence was

sufficient to support, warranted the court in subjecting the legal title to the 1/16th overriding royalty, to a trust for appellee to the extent of half thereof?

It is clear that appellant did not intend that he should hold the legal title to half of his share of the royalty in trust for appellee. That is to say, it is clear that no express trust was proved here, and that is true with respect to a trust implied in fact. But equity, for the sake of the remedy, will impose upon a party against his will and intention, the status of a trustee where his conduct has been such as to require such status in order that justice be attained. Among the instances where a court of equity will impose a trust against a defendant's obvious intention is where one buys land in his own name with the money of another with the intention of defrauding the one whose money he so uses. In the early case of McCoy's Heirs v. Crawford, 9 Tex. 358, it was held: "Where one buys land with the money of another and takes the deed in his own name, a trust results in favor of the person whose money was employed in making the purchase. The latter is the equitable owner of the land and the purchaser is a mere trustee and holds for the benefit of him who paid the purchase money."

The courts are suspicious of resulting trusts of the purchase-money type and "regard them as possible instruments for depriving a person of his property by fraud and perjury, and therefore require one who claims the benefit of such a trust to prove his case by 'clear and convincing' evidence. * * * Practically it is probably extremely difficult for a resulting cestui of the purchase-money class to prove his case without some writing. * * *". 2 Bogert, Trusts and Trustees, § 453, p. 1351.

The only written evidence adduced in evidence by appellee in support of his case was the draft for $2,500 which was shown to have been paid, and which appellant admitted that he received. Appellant's evidence failed to account for the use of said sum so as to exclude the possibility that same was not employed by appellant in the purchase of the lease. We confess that we are doubtful whether the rule as to the purchase-money trustee applies here. It seems almost that the court here has specifically enforced a contract, rather than enforced the purchase-money rule, and the evidence is clearly insufficient to enforce specific performance, or a partnership undertaking. However, we have concluded, however doubtfully, that the judgment must be affirmed, and it is so ordered.

Affirmed.