Angela GLOVER, Betty Hoffman, and
Carman Tucker, Appellants,

v.

UNION PACIFIC RAILROAD COMPA-
NY, Anadarko Holding Co., Anadarko
Land Corporation, The Unknown
Stockholders of Gregg Oil Co., and
The Unknown Stockholders of N.P.
Powell, Inc., Appellees.

No. 06–04–00100–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 1, 2005.

Decided Feb. 17, 2006.

See also 135 Tex. 428, 143 S.W.2d 361.

Ron W. Boorman, The Law Office of Ron Boorman, Longview, R. Crist Vial, Dallas, for appellants.

Mark A. Calhoun, David F. Johnson, Winstead, Sechrest & Minick, PC, Dallas, Greg S. Mathews, Winstead, Sechrest & Minick, PC, Houston, Craig T. Enoch, Winstead, Sechrest & Minick, PC, Austin, for Union Pacific Railroad Company.

Michael E. McElroy, McElroy, Sullivan & Miller, LLP, Austin, for Anadarko Holding Co., Anadarko Land Corp., The Unknown Stockholders of Gregg Oil Co., & The Unknown Stockholders of N.P. Powell, Inc.

## OPINION

Opinion by Chief Justice MORRISS.

Before he became governor of Texas in 1907, T.M. Campbell owned a particular parcel of Gregg County real property

which straddled a railroad right-of-way and included the minerals beneath that right-of-way. In 1904, Mr. Campbell executed a deed conveying to G.B. Turner the 165 acres of that land lying south of the south boundary line of the railroad right-of-way, which 165–acre tract is herein called the "Nettleton Tract."[1] Though the deed to Turner did not describe Campbell's six acres lying within the railroad right-of-way and south of the track centerline—the six acres herein called the "Campbell Tract"—central to this case is whether that deed to Turner conveyed not only the Nettleton Tract, but also the Campbell Tract's minerals. In 1940, the Texas Supreme Court ruled that the minerals in Campbell's railroad right-of-way, but *north* of the track centerline, passed to the grantee of Campbell's acreage lying *north* of the right-of-way. *See Cox v. Campbell,* 135 Tex. 428, 143 S.W.2d 361 (1940). Through a rather detailed history

of the Campbell and Nettleton Tracts,[2] Angela Glover, Betty Hoffman, and Carman Tucker (herein called "Claimants") ultimately succeeded to a fractional mineral interest in the Nettleton Tract, while Defendants[3] Anadarko and Union Pacific succeeded to a fractional mineral interest in the Campbell Tract.

Claimants appeal[4] the trial court's granting the summary judgment motions and pleas to the jurisdiction urged by Defendants. Alleging that they own the Campbell Tract mineral interests, Claimants argue that, when T.M. Campbell did not reserve the Campbell Tract minerals in this deed of the Nettleton Tract to Turner, the Campbell Tract minerals—under the strips and gores doctrine—passed to Turner with the Nettleton Tract. Therefore, when Gregg Oil (Anadarko's predecessor) and Texas & Pacific (Union Pacific's predecessor) accepted a 1932 quitclaim deed of a fractional interest in the

---

1. In 1907, Turner sold the 165 acres to A.C. Caldwell, who sold it to Edna M. Nettleton in 1917. So the 165 acres became known as the Nettleton Tract.

2. By the early 1930s, Edna Nettleton still owned the Nettleton Tract. On January 13, 1931, Edna Nettleton executed an oil, gas, and mineral lease for the Nettleton Tract to J.C. O'Brien. On May 2, 1931, Carol L. Simpson received and recorded a mineral deed from Nettleton consisting of twenty-five percent of the mineral estate in the Nettleton Tract. This conveyance was subject to the 1931 O'Brien oil, gas, and mineral lease.

 On September 29, 1931, Fanny Campbell, the widow of T.M. Campbell, leased the Campbell Tract oil and gas to Gregg Oil, the predecessor of Anadarko Gregg Oil. Under the terms of the lease, Mrs. Campbell would receive 1/8 of the income and Gregg Oil would retain 7/8. In October of 1931, Gregg Oil Company drilled an oil well on the Campbell Tract. On January 26, 1932, the Texas & Pacific Railroad claimed that it had adversely possessed the Campbell Tract. Gregg Oil agreed to pay Texas & Pacific fifty percent of the net revenue under the lease.

On November 7, 1932, Gregg Oil and Texas & Pacific obtained a quitclaim deed from Nettleton for her interest in the Campbell Tract. At the time of the quitclaim, though, Nettleton possessed only a 1/8 interest in the Nettleton Tract. On December 13, 1985, Claimants inherited their interest from Simpson, who had received an undivided partial mineral interest from Nettleton before Nettleton's quitclaim deed to Gregg Oil and Texas & Pacific.

3. Throughout this opinion, we use the term "Defendants" to refer to all Appellees herein, unless the context requires a contrary use. The identities of the various Defendants are not at issue in this appeal.

4. On appeal, Claimants raise eight issues: (1) Claimants became cotenants with the Defendants; (2) there is no adverse possession by the Defendants; (3) there is no evidence of repudiation; (4) estoppel by deed protects Claimants in this case; (5) Defendants fraudulently concealed their acts; (6) the use of recitals is limited; (7) there was no constructive notice; and (8) pleas to the jurisdiction are not meritorious.

Campbell Tract minerals from Nettleton, they became cotenants with Claimants or Claimants' predecessors in title. Therefore, according to Claimants, the Campbell Tract minerals have not been adversely possessed because there has been no repudiation of the cotenancy to allow limitations to run. Also, they argue, estoppel by deed applies, and no cotenant claimed more than 43.75% of the mineral estate. Further, according to Claimants, any statute of limitations has been tolled because Union Pacific, Anadarko, and their predecessors fraudulently concealed their failure to account to their cotenants.

In response, Union Pacific and Anadarko argue that Claimants never owned any mineral interests in the right-of-way because T.M. Campbell implicitly reserved his interest in the right-of-way in 1904. In addition, Union Pacific and Anadarko both argue that Claimants lack standing to sue for injuries to land and have waived error by failing to comply with the appellate briefing rules. They also claim title to the minerals through adverse possession. Union Pacific also argues that the suit is barred by the four-year statute of limitations for suits for accounting.

We affirm the judgment of the trial court, based on six holdings:

(1) Claimants have properly brought these claims because (a) they have standing as heirs to the property interests in question, and (b) the claims need not have been brought as a trespass to try title suit.

(2) By law, because T.M. Campbell did not expressly reserve rights to the minerals under the Campbell Tract, they passed to his grantee, Claimants' predecessor.

(3) Defendants Anadarko and Union Pacific have title to the Campbell Tract mineral interests through adverse possession because (a) they and their predecessors in title actually possessed the mineral estate

adversely, and (b) though a cotenancy existed in the property, there was constructive notice of repudiation of the cotenancy by long and open mineral production from the property.

(4) Estoppel by deed does not apply.

(5) There is no evidence of fraudulent concealment.

(6) Limitations bars any claim for an accounting for the production taken from the property before adverse possession title ripened.

*(1) Claimants Have Properly Brought These Claims Because (A) They Have Standing as Heirs to the Property Interests in Question, and (B) the Claims Need Not Have Been Brought as a Trespass to Try Title Suit*

*(A) Claimants Have Standing as Heirs to the Property Interests in Question*

Before addressing the substance of Claimants' claims, we must first determine if we have subject-matter jurisdiction over this appeal. Anadarko and Union Pacific each filed a plea to the jurisdiction challenging Claimants' standing to bring suit. Because Claimants inherited the property in question and the cause of action survives the death of the decedent, Claimants have standing to bring this suit.

■■■■ A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction over the controversy. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Id.* Whether the trial court had subject-matter jurisdiction is a question of law subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Cook v. Exxon Corp.,* 145 S.W.3d 776, 780 (Tex.App.-Tex-

arkana 2004, no pet.). Accordingly, we review de novo the trial court's determination of standing.

▓▓▓▓ Standing is a constitutional prerequisite to maintaining a suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993). Standing, as a necessary component of a court's subject-matter jurisdiction, cannot be waived. *Id.* Standing requires the claimant to demonstrate a particularized injury distinct from that suffered by the general public. *Blue,* 34 S.W.3d at 556; see *Rodgers v. RAB Invs., Ltd.,* 816 S.W.2d 543, 546 (Tex.App.-Dallas 1991, no writ). The claimant must have an actual grievance, not one that is merely hypothetical or generalized. *Brown v. Todd,* 53 S.W.3d 297, 302 (Tex.2001).

▓▓▓▓ Only the person whose primary legal right has been breached has standing to seek redress for an injury. *Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex.1976); *Cook,* 145 S.W.3d at 781. In other words, a person has standing to sue only when he or she is personally aggrieved by an alleged wrong. *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). "Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate." *Denman v. Citgo Pipeline Co.,* 123 S.W.3d 728, 732 (Tex.App.-Texarkana 2003, no pet.); *Brunson v. Woolsey,* 63 S.W.3d 583, 587 (Tex.App.-Fort Worth 2001, no pet.).

We review de novo the issue of standing. *Tex. DOT v. City of Sunset Valley,* 146 S.W.3d 637, 646 (Tex.2004).

▓▓▓▓ Union Pacific and Anadarko argue Claimants lack standing because they did not own the property when the cause of action accrued. Union Pacific and Anadarko cite this Court's opinions in *Cook,* 145 S.W.3d at 780, and *Denman,* 123 S.W.3d 728, for the proposition that Claim-

ants lack standing. In *Denman* and *Cook,* this Court held that the plaintiffs lacked standing when any injury to the property occurred before the plaintiffs purchased the property and their deeds contained no assignment of any cause of action. *Denman,* 123 S.W.3d at 734–35. The cause of action for an injury to property belongs to the person owning the property at the time of the injury. *Cook,* 145 S.W.3d at 781; *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex.App.-Austin 1980, writ ref'd n.r.e.). Without express provision, the cause of action does not pass to a subsequent purchaser of the property. *Cook,* 145 S.W.3d at 781. Without such an express provision, a subsequent purchaser cannot recover for an injury committed before his or her purchase. *Id.*

Our decision in *Denman* is distinguishable from the current case. Claimants in this case are not subsequent purchasers of the property, but rather the heirs of the deceased party. Further, this case concerns a suit for damages based on an alleged failure to account rather than for damages to real property. Therefore, the issue is whether the cause of action survived the death of the originally injured party.

▓▓▓▓ To determine whether a cause of action survives, we must first determine whether the survivability of the cause is controlled by common law principles or whether a statute provides for survival. Neither party argues that a statute controls the survivability, and our own research has yielded none. When a cause of action is not covered by a survival statute, the common law will control. *First Nat'l Bank of Kerrville v. Hackworth,* 673 S.W.2d 218, 220 (Tex.App.-San Antonio 1984, no writ).

▓▓▓▓ When determining whether a cause of action survives at common law,

courts should examine the nature or substance of the cause of action rather than the form in which it is asserted. *Dowlin v. Boyd,* 291 S.W. 1095, 1098 (Tex. Comm'n App.1927, judgm't adopted); *State v. Stone,* 271 S.W.2d 741, 749 (Tex.Civ.App.-Beaumont 1954, no writ). Under the common law, a suit for injury to personal or real property will survive the death of the decedent and pass to the heirs of the decedent. *See Dowlin,* 291 S.W. at 1098; *Hackworth,* 673 S.W.2d at 220; *Pace v. McEwen,* 574 S.W.2d 792, 800 (Tex.Civ. App.-El Paso 1978, writ ref'd n.r.e.).

> The true line of demarcation at common law separating those causes of action which survive, from those which do not, is that in the first, the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter, the injury complained of is to the person, and the property and rights of property affected are merely incidental. In the former case the cause of action survives, while in the latter it abates.

*Dowlin,* 291 S.W. at 1098 (fraud survives death of injured party); *see Hackworth,* 673 S.W.2d at 220; *Pace,* 574 S.W.2d at 800.

The cause of action at issue is a suit for damages due to Union Pacific's failure to account to Claimants and their predecessors for their mineral interests in the Campbell tract. This cause of action clearly is concerned with injuries to property rights and, under the common law, survives the death of the injured party. Also, Claimants, as heirs, would ostensibly have their own, nonderivative claim for an accounting.[5] Thus, Claimants had standing to sue.

*(B) The Claims Need Not Have Been Brought as a Trespass to Try Title Suit*

■ Another preliminary matter which must be decided before we turn to the merits of this case is whether Claimants were required to bring this suit as a trespass to try title. To determine whether Union Pacific and Anadarko had a duty to account to Claimants, we must determine whether Claimants or their predecessors owned a mineral interest in the Campbell tract. Union Pacific and Anadarko argue that, because trespass to try title is the sole method of determining ownership of real property, Claimants were required to bring this suit as a trespass to try title.

■ Section 22.001 of the Texas Property Code provides that "[a] trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP.CODE ANN. § 22.001 (Vernon 2000). The Texas Supreme Court has held that a trespass-to-try-title action is the exclusive method of determining title to land or real property. *Martin v. Amerman,* 133 S.W.3d 262, 265–67 (Tex.2004). The trespass-to-try-title statute was enacted to provide a remedy for the resolution of title issues and "is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner." *Id.* at 265. Because trespass to try title is a possessory remedy, however, a nonpossessory interest such as an overriding royalty interest is not suitable for a trespass-to-try-title suit. *T–Vestco Litt– Vada v. Lu–Cal One Oil Co.,* 651 S.W.2d 284, 291 (Tex.App.-Austin 1983, writ ref'd

---

**5.** Even if monetary claims of Claimants' predecessors did not pass to Claimants, Claimants, insofar as they claim to have inherited the Campbell Tract minerals, would have standing to assert their own monetary claim on account of production taken from the tract during Claimants' claimed ownership of those minerals.

n.r.e.); *Grasty v. Wood,* 230 S.W.2d 568, 571 (Tex.Civ.App.-Galveston 1950, writ ref'd n.r.e.). While this case concerns royalty interests rather than overriding royalty interests, possession of the property is not at issue. A royalty interest is a non-possessory interest. *Natural Gas Pipeline Co. v. Pool,* 124 S.W.3d 188, 192 (Tex. 2003). Claimants are seeking damages for failure to account rather than attempting to gain possession of the Campbell Tract. Because this dispute does not concern possession of real property, Claimants were not required to bring the action in trespass to try title.[6]

We now turn to the substantive issues involved in this appeal which arise from the trial court's granting summary judgment and pleas to the jurisdiction.[7]

6. In a formal trespass-to-try-title action, the plaintiff must prove a regular chain of conveyances from the sovereignty, prove superior title out of common source, prove title by limitations, or prove prior possession which has not been abandoned. *Martin,* 133 S.W.3d at 265; *Rogers v. Ricane Enters., Inc.,* 884 S.W.2d 763 (Tex.1994). We note, as discussed below, that Claimants did prove superior title from a common source, T.M. Campbell.

7. Both Anadarko and Union Pacific filed motions for summary judgment arguing that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. These motions also argued there was no evidence of at least one of the elements of Claimants' causes of action. As such, these motions were both traditional and no-evidence summary judgment motions.

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993). The movant has the burden of showing there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex. 1979); *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377 (Tex.App.-Texarkana 1989, no writ). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara,* 71 S.W.3d at 311.

A no-evidence summary judgment is essentially a pretrial motion for a directed verdict. We therefore apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003); *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Rodriguez,* 92 S.W.3d at 506; *Woodruff v. Wright,* 51 S.W.3d 727, 734 (Tex.App.-Texarkana 2001, pet. denied). "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Chapman,* 118 S.W.3d at 751. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Chapman,* 118 S.W.3d at 751; *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). More than a scintilla of evidence

*(2) By Law, Because T.M. Campbell Did Not Expressly Reserve Rights to the Minerals Under the Campbell Tract, They Passed to His Grantee, Turner, Predecessor to Claimants*

Claimants claim ownership in the right-of-way through the conveyance of a 165–acre tract of land immediately south of the right-of-way. Union Pacific and Anadarko contend T.M. Campbell retained the Campbell Tract when he deeded the land to Turner. We disagree. Under the strips and gores doctrine,[8] because T.M. Campbell did not expressly reserve the Campbell Tract mineral interests,[9] they passed to Turner with the Nettleton Tract.

In *Rio Bravo Oil Co. v. Weed,* 121 Tex. 427, 50 S.W.2d 1080 (1932), the Texas Supreme Court held there was a presumption that a deed conveys land to the center of the right-of-way even when the deed describes the abutting land as extending only to the edge of the right-of-way. Eight years later in *Cox,* the Texas Supreme Court reiterated *Weed* in dealing with facts virtually identical to those alleged in this case.[10] *See Cox,* 143 S.W.2d at 365; *see also Angelo v. Biscamp,* 441 S.W.2d 524, 526 (Tex.1969) ("[A] deed to land abutting on a railroad right-of-way conveys title to the center of the right-of-way unless a contrary intention is expressed in the instrument."); *Reagan v. Marathon Oil Co.,* 50 S.W.3d 70, 77 (Tex.App.-Waco 2001, no pet.). We are bound by Texas Supreme Court precedent to hold that the Campbell to Turner deed conveyed the property interests Campbell held to the center of the right-of-way.

Union Pacific and Anadarko argue that the strips and gores doctrine does not apply because the property is of significant value. The strips and gores doctrine requires the strip (1) to be small in comparison to the land conveyed, (2) to be adjacent to or surrounded by the land conveyed, (3) to belong to the grantor at the time of conveyance, and (4) to be of insignificant or little practical value. *Alkas v. United Sav. Ass'n,* 672 S.W.2d 852, 857 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.); *see Angelo,* 441 S.W.2d at 526. In *Cox,* the Texas Supreme Court found that the minerals immediately adjacent to the Campbell Tract were "of little practical value." *Cox,* 143 S.W.2d at 365. While the tract may be valuable now—and certainly the mineral production proceeds from the Campbell Tract over at least seventy years is quite valuable—the land

---

exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc.,* 953 S.W.2d at 711.

8. Union Pacific and Anadarko argue that the strips and gores doctrine does not apply because Claimants failed to plead that the deed was ambiguous. *See Woolaver v. Texaco, Inc.,* 594 S.W.2d 224, 225 (Tex.App.-Fort Worth 1980, writ ref'd n.r.e.). Any defect "either of form or of substance" must be "pointed out by exception in writing" and brought to the attention of the trial court, or it is waived. Tex.R. Civ. P. 90; *see Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982). Claimants premised their argument to the trial court on *Cox,* 135 Tex. 428, 143 S.W.2d 361, which applies the strips and gores doctrine.

9. The 1904 deed from Campbell to Turner describes the land conveyed:

 bounded on the E. by a 50 acre tract of land owned by G.B. Turner, purchased by him from N.W. Rodden, bounded on the N. by the Right of way of the Texas & Pacific R.R. Co. and on the W. by a fifty acre tract owned by said G.B. Turner, and known as the J.F. Neal tract of land.

10. It is unclear whether *Cox* involved Claimants' predecessors in interest. Although the case interprets Turner's property, the case simply lists "Cox, et al." and "Cox and others."

underneath a railroad right-of-way was of little perceived value in 1904 before oil was discovered in the area. In comparison to the adjacent tract explicitly conveyed to Turner, the Campbell Tract was small and had little practical value at the time conveyed. Under the strips and gores doctrine, T.M. Campbell did not retain any interest in the Campbell Tract. Thus, Claimants would own part of the Campbell Tract minerals unless adverse possession changed title.

*(3) Defendants Anadarko and Union Pacific Have Title to the Mineral Interests Through Adverse Possession Because (A) They and Their Predecessors in Title Actually Possessed the Mineral Estate Adversely, and (B) Though a Cotenancy Existed in the Property, There Was Constructive Notice of Repudiation of the Cotenancy by Long and Open Mineral Production from the Property*

*(A) Anadarko and Union Pacific, and Their Predecessors in Title, Actually Possessed the Mineral Estate Adversely*

■ Claimants argue[11] that adverse possession was not established as a matter of law. We disagree for the reasons in this and subsequent sections of this opinion.

■ An adverse possession claim requires proof of six elements: (1) actual possession of the disputed property, (2) that is open and notorious, (3) that is peaceable, (4) under a claim of right, (5) that is adverse or hostile to the claim of the owner, (6) consistently and continuously for the duration of the statutory period. *See Pool,* 124 S.W.3d at 193–94; *Cherokee*

*Water Co. v. Freeman,* 145 S.W.3d 809, 817 (Tex.App.-Texarkana 2004, pet. denied); *Taub v. Houston Pipeline Co.,* 75 S.W.3d 606, 625 (Tex.App.-Texarkana 2002, pet. denied).

■ Owners of undivided portions of oil and gas interests are tenants in common. *Willson v. Superior Oil Co.,* 274 S.W.2d 947, 950 (Tex.Civ.App.-Texarkana 1954, writ ref'd n.r.e.). In addition, an oil and gas lessee of a cotenant becomes a cotenant with the cotenants of its lessor. *Id.* Absent an agreement to the contrary, a cotenant has the right to lease his or her interest without joinder of other cotenants. *Burnham v. Hardy Oil Co.,* 147 S.W. 330, 334 (Tex.Civ.App.-San Antonio 1912), *aff'd,* 108 Tex. 555, 195 S.W. 1139 (1917). But if the lessee drills for and finds gas or oil, the cotenant is required to account to nonparticipating cotenants for the latter's interest in the production. *Id.* Due to the quitclaim deed, Union Pacific and Gregg Oil were cotenants with Claimants and were initially required to account to Claimants for their interests in the mineral estate.

Union Pacific and Anadarko, and their predecessors, became cotenants with Claimants by virtue of the 1932 Nettleton quitclaim deed. Although Union Pacific and Anadarko had already obtained a mineral lease from Fannie Campbell, the widow of T.M. Campbell, they were effectively naked trespassers until they became cotenants by virtue of the Nettleton quitclaim deed.

On May 2, 1931, Simpson received and recorded a mineral deed from Nettleton consisting of twenty-five percent of the

---

**11.** Claimants' argument includes these reasons: (1) there was no actual possession, as the possessory cotenant claimed only 43.75% of the interest; (2) there was no actual notice of repudiation; (3) there must be actual, rather than just constructive, notice of repudiation; and (4) the parties are estopped from adversely possessing the mineral interest by the 1904 deed and the quitclaim deed.

mineral estate of the Nettleton Tract. Because T.M. Campbell did not retain any interest in the Campbell Tract, Simpson's mineral interest included a twenty-five percent mineral interest in the Campbell Tract to the center of the right-of-way. *See Cox,* 143 S.W.2d at 365.

On September 29, 1931, Gregg Oil, Anadarko's predecessor in interest, obtained an oil and gas lease from Fannie Campbell on the Campbell Tract. Under the terms of the lease, Fannie Campbell would receive 1/8 of the income, Union Pacific's predecessor in interest would receive 43.75%, and Anadarko's predecessor in interest would receive 43.75%. At this point, all three parties were essentially naked trespassers. But Gregg Oil and Texas & Pacific obtained a quitclaim deed from Nettleton for her interest in the Campbell Tract on November 7, 1932. Because Nettleton had previously conveyed 7/8 of her interest in the mineral estate, Gregg Oil and Texas & Pacific obtained a 1/8 interest in the Campbell Tract minerals.

■ A mineral estate may be adversely possessed under the various statutes of limitations. *Pool,* 124 S.W.3d at 192–93; *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.021, 16.024, 16.025, 16.026, 16.028, 16.029 (Vernon 2002). Union Pacific and Anadarko claim they have adversely possessed the Campbell Tract under one of these statutes.

■ Claimants argue that, because none of the tenants attempted to possess the whole mineral interest of the land, their possession was not adverse to their

cotenants. Fannie Campbell claimed ownership of 12.5% of the income, Gregg Oil claimed 43.75% and Texas & Pacific claimed 43.75%. In *Pool,* the Texas Supreme Court held that, when a lessee retains only a royalty interest, the lessor acquires title to "all the oil and gas and the lessor owns only a possibility of reverter and has the right to receive royalties." *Pool,* 124 S.W.3d at 192. The Texas Supreme Court noted that an oil and gas lease "is not a 'lease' in the traditional sense of a lease of the surface of real property. In a typical oil or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee." *Id.* Thus, the oil and gas lessee acquires ownership of all the minerals subject to the possibility of reversion to the lessor. *Id.* Thus, as the oil and gas lessee, Anadarko and its predecessors possessed the entire mineral estate.

*(B) Though a Cotenancy Existed in the Property, There Was Constructive Notice of Repudiation of the Cotenancy by Long and Open Mineral Production from the Property*

■ Before the cotenant can begin to adversely possess the land, he or she must repudiate the tenancy. *Pool,* 124 S.W.3d at 194; *Tex–Wis Co. v. Johnson,* 534 S.W.2d 895, 899 (Tex.1976); *see Witcher v. Bennett,* 120 S.W.3d 922, 925 (Tex. App.-Texarkana 2003, pet. denied).[12]

■ Anadarko and Union Pacific argue that Claimants had actual notice of the repudiation because of the 1931 well-spacing agreement signed by Simpson.[13] Yet

---

**12.** Claimants also argue that Union Pacific, Anadarko, and their predecessors were tenants at sufferance after the Texas Supreme Court opinion in *Cox. See Cox,* 143 S.W.2d at 365. Similar to a cotenancy, a tenancy at sufferance, which occurs when a party remains in possession of the property after an adverse judgment, must be repudiated before

the adverse possession statutes begin to run. *Witcher,* 120 S.W.3d at 924–25. Because the analysis is substantially similar and Claimants have not shown that their predecessors were parties to *Cox,* our analysis focuses on the cotenancy argument.

**13.** The 1931 well-spacing agreement contained the following recital: "Whereas, the

this agreement was signed before the creation of the cotenancy by the 1932 quitclaim deed. The cotenancy could not be repudiated before it was even formed. Therefore, we reject Union Pacific's and Anadarko's argument that the 1931 agreement provided actual notice of repudiation.[14]

■■■ Actual notice of repudiation is not required. *Pool,* 124 S.W.3d at 194;[15] *Tex–Wis Co.,* 534 S.W.2d at 899; *see Thedford v. Union Oil Co.,* 3 S.W.3d 609, 614 (Tex.App.-Dallas 1999, pet. denied). Adopting the reasoning of the Galveston Court of Civil Appeals, the Texas Supreme Court has held that:

> Such notice may be constructive and will be presumed to have been brought home to the co-tenant or owner when the adverse occupancy and claim of title to the property is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the co-tenant or owner out of possession, or from which a jury might rightfully presume such notice. It is held that repudiation of the claim of a co-tenant and notice thereof may be shown by circumstances and that a jury may infer such facts from

long continued possession of the land under claim of ownership and non-assertion of claim by the owners.

*Tex–Wis Co.,* 534 S.W.2d at 899 (quoting *Mauritz v. Thatcher,* 140 S.W.2d 303, 304 (Tex.Civ.App.-Galveston 1940, writ ref'd)); *accord Pool,* 124 S.W.3d at 194. Constructive notice can be established by (1) long-continued possession, or (2) change in the use or character of possession of the land. *Tex–Wis Co.,* 534 S.W.2d at 901; *Witcher,* 120 S.W.3d at 924–25.

■■■ For close to seventy years, Gregg Oil and its successors have been extracting oil from the Campbell Tract and currently continue to extract oil. The royalties on the six acres have been paid to the holders of the Union Pacific, Anadarko, and Campbell interests for close to seventy years. In addition, the Defendants paid taxes on the property for seventy years.[16] The appropriate tax records and Railroad Commission records were filed. The oil wells and the operations were in plain view during this entire period. More than enough time has passed for the cotenancy to be repudiated and the ten-year statute of limitations to run.[17] Because Claimants had constructive notice of repudiation, and because Union Pacific, as an oil and gas

---

above tract of land adjoins the right-of-way of the Texas & Pacific Railroad which right-of-way is under lease for oil and gas purposes to Gregg Oil Co."

14. We also note that, even with proof of actual notice before the 1940 *Cox* opinion, the decision would have established at least a partial tenancy at sufferance as to the Campbell Tract minerals. Therefore, the tenancy would need to be repudiated again in order for the statute of limitations to run.

15. In *Pool,* the Texas Supreme Court held that the oil company, a prior lessee of the plaintiffs, adversely possessed the tract when the parties had constructive notice of repudiation.

16. Claimants argue that taxes are only relevant under the five-year statute of limitations. Some courts have held that payment of taxes is an assertion of ownership. *See Tex–Wis,* 534 S.W.2d at 901; *Achille v. Baird,* 361 S.W.2d 439, 444 (Tex.Civ.App.-Houston 1962, writ ref'd n.r.e.). *But see Spiller v. Woodard,* 809 S.W.2d 624, 629 (Tex.App.-Houston [1st Dist.] 1991, no writ); *McDougall v. McDougall,* 316 S.W.2d 295, 299 (Tex.App.-Eastland 1958, writ ref'd n.r.e.).

17. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.026 (ten-year statute). Because the ten-year adverse possession statute clearly applies, we need not determine whether suit is barred under the other statutes.

lessee, has possessed the whole of the mineral estate, Claimants' mineral interests in the Campbell Tract have been adversely possessed. As a matter of law, Claimants had constructive notice of repudiation through long and continuous use by Defendants and their predecessors.

### (4) Estoppel by Deed Does Not Apply

▬ Claimants argue that Fannie Campbell is estopped by virtue of the deed to Turner.[18] Again, we disagree. Because the deed is ambiguous, because Fannie Campbell "re-entered" the property after the execution of the deed, and because the deed has effectively been repudiated by long use under Campbell, estoppel by deed does not apply.[19]

▬ Estoppel by contract or deed prevents a party from taking a position inconsistent with the contract to the prejudice of another. *Hawn v. Hawn*, 574 S.W.2d 883, 886 (Tex.Civ.App.-Eastland 1978, writ ref'd n.r.e.); *see Ex parte Payne*, 598 S.W.2d 312, 317 (Tex.Civ.App.-Texarkana 1980, orig. proceeding). The Texas Supreme Court has held:

> It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him.

*Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878, 880 (1940); *see Gutierrez v. Rodriguez*, 30 S.W.3d 558, 561 (Tex.App.-Texarkana 2000, no pet.).

▬ But the deed must be clear and unambiguous in order for estoppel by deed to apply. *Kuykendall v. Spiller*, 299 S.W. 522, 527 (Tex.Civ.App.-Fort Worth 1927, writ ref'd); *cf. Freeman*, 145 S.W.3d at 816. The Campbell deed did not describe the Campbell Tract, so none could claim it clearly and unambiguously described the Campbell Tract interests in dispute.

▬ In addition, estoppel by deed does not apply when a grantor re-enters the property after the execution of the deed. *McLaren*, 811 S.W.2d at 568–69. By the oil and gas lease from Fanny Campbell, she effectively re-entered the property after her husband executed the 1904 deed to Turner.

▬ Also, a party is not estopped by a deed if he or she repudiates the deed and

---

**18.** Claimants argued that Union Pacific and Anadarko are estopped by accepting the quitclaim deed because that act constituted acknowledgement that T.M. Campbell did not retain title to the Campbell Tract. The adverse possessor's acknowledgement of title in another, made before the completion of the bar, will defeat adverse possession. *Bruni v. Vidaurri*, 140 Tex. 138, 166 S.W.2d 81, 88 (1942); *First Nat'l Bank v. Beavers*, 602 S.W.2d 327, 330 (Tex.Civ.App.-Texarkana 1980, no writ). However, "[a] quitclaim deed is not a conveyance or a muniment of title. By itself, it does not establish any title in those holding the deed, but merely passes the interest of the grantor in the property." *Rogers*, 884 S.W.2d at 769 (citations omitted). Therefore, the acceptance of the quitclaim deed may not necessarily constitute an ac-

knowledgement of title. Further, even if the acceptance of the quitclaim constitutes acknowledgement of the cotenancy, a party is not estopped by a deed if he or she repudiates the deed and gives notice of such repudiation to the record owner. *McLaren v. Beard*, 811 S.W.2d 564, 568 (Tex.1991) (citing *Sweeten v. Park*, 154 Tex. 266, 276 S.W.2d 794, 797 (1955)). More than sufficient time has passed to give constructive notice of repudiation of the deed as a matter of law.

**19.** In addition, Claimants failed to plead estoppel by deed. *See Huddleston v. Tex. Commerce Bank*, 756 S.W.2d 343, 346–47 (Tex. App.-Dallas 1988, writ denied) (estoppel by deed must be affirmatively pled).

gives notice of such repudiation to the record owner. *Id.* at 568 (citing *Sweeten,* 276 S.W.2d at 797). In the same way that the long use of the Campbell Tract minerals by Defendants and their predecessors provided constructive notice of repudiation of the cotenancy, it also provided constructive notice of repudiation of the deed as a matter of law.

Because the Campbell to Turner deed did not clearly and unambiguously describe the Campbell Tract minerals in dispute, the grantor's successor re-entered the property after execution of the deed, and Claimants and their predecessors have received constructive notice of repudiation of the deed, estoppel by deed does not bar adverse possession under the facts of this case.

*(5) There Is No Evidence of Fraudulent Concealment*

■ Claimants argue that limitations—as to title and as to a cause of action for an accounting—have been tolled due to fraudulent concealment. Claimants argue that Union Pacific, Anadarko, and their predecessors filed fraudulent tax returns,[20] filed fraudulent well-spacing exceptions, and failed to give notice to Claimants of the well-spacing applications. None of these allegations create a fact issue concerning whether the Defendants or predecessors used deception to conceal their actions. Claimants have presented no more than a scintilla of evidence that Union Pacific or Anadarko, or their predecessors, used deception to conceal.

■ Fraudulent concealment is an equitable defense to limitations that estops the concealer from relying on the statute of limitations. *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex.1983). Fraudulent concealment tolls the statute of limitations until the injured party, using reasonable diligence, discovered or should have discovered the injury. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 750 (Tex.1999).

> The elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.

*Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 439 (Tex.App.-Fort Worth 1997, pet. denied); *see HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex. 1998).

■ According to Claimants, Union Pacific, Anadarko, and their predecessors committed fraudulent concealment because they failed to correct the recital contained in the 1931 well-spacing agreement. The 1931 well-spacing agreement recited: "Whereas, the above tract of land adjoins the right-of-way of the Texas & Pacific Railroad which right-of-way is under lease for oil and gas purposes to Gregg Oil Co." Union Pacific, Anadarko, or their predecessors in interest were not parties to the 1931 well-spacing agreement. The agreement was between various landowners, including Claimants' predecessor in interest, and Tidal Oil. The failure to correct another's misstatement is not a fraudulent failure to disclose. *Lesikar v. Rappeport,* 33 S.W.3d 282, 298–99 (Tex.App.-Texarkana 2000, pet. denied).

---

**20.** Claimants argue that Union Pacific, Anadarko, Fannie Campbell, and their predecessors filed fraudulent tax returns because they claimed ownership of land which was not theirs. As noted above, several courts have held that payment of taxes constitutes a claim of ownership. Further, payment of taxes is an element in one of the adverse possession statutes. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.025(a)(2). The fact that Union Pacific, Anadarko, and their predecessors paid taxes on the property is no evidence of fraud.

In addition, Claimants contend that a letter addressed to J.C. Hunter, president of Gregg Oil, from W.W. Fleming, president of Mid–Kansas Oil and Gas Company,[21] represents "ground zero" of the fraud perpetrated by Gregg Oil. The letter, though, concerns the spacing of wells rather than any agreement to defraud Claimants' predecessors. The letter includes this text:

In your letter you advise that you have made a proposed location on a lease executed by the Texas and Pacific Railway Company to your company covering the railroad right of way immediately north and adjacent to our E.M. Nettleton farm.... It is further my understanding that this location will cause you to drill your well 49 feet from our north line.

Mr. Hasson advises me that he has discussed this matter with Mr. Batenman and you and that if we agree to this location and not contest the location before the Railroad Commission, you will agree to cooperate with us when we make a location on our tract.

It would be our intention in agreeing to your location, that when we drill not to directly offset your well but to move to a location further east and at a selected point further east locate a well to be considered an offset to this proposed location of yours, putting it the same distance south of our north line that your well is north of our north line. In other words, it would be the plan of both your company and ours to avoid unnecessary drilling and to avoid too close drilling of wells and to stagger locations as drilling is demanded, rather than drill direct offsets close to each other.

This letter is no more than a scintilla of evidence of fraudulent concealment. Claimants argue that Union Pacific, Anadarko, and their predecessors committed fraudulent nondisclosure because they had a duty to disclose. In support of this proposition, Claimants cite *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197, 204–05 (1957); *Zimmerman v. First Am. Title Ins. Co.*, 790 S.W.2d 690, 699–700 (Tex.App.-Tyler 1990, writ denied); *Gibson v. Burkhart*, 650 S.W.2d 185, 188–89 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.). These opinions, though, are distinguishable from this case because each involved fraud by a fiduciary or a trustee. Absent an agreement to the contrary, a cotenant has no fiduciary obligation to the other cotenants. *Scott v. Scruggs*, 836 S.W.2d 278, 282 (Tex. App.-Texarkana 1992, writ denied); *Donnan v. Atl. Richfield*, 732 S.W.2d 715, 717 (Tex.App.-Corpus Christi 1987, writ denied); *Hamman v. Ritchie*, 547 S.W.2d 698, 706 (Tex.Civ.App.-Fort Worth 1977, writ ref'd n.r.e.). Claimants have failed to establish an agreement or other facts creating a fiduciary relationship or other special relationship giving rise to a duty to disclose. There is no evidence that Union Pacific or Anadarko, or their predecessors, had a duty to disclose. A failure to disclose is fraud only when there is a duty to disclose. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145 (Tex.App.-Houston [1st Dist.] 2005, no pet. h.).

In addition, Claimants should have discovered the injury long ago. The doctrine of fraudulent concealment tolls the statute of limitations only until the plaintiffs, using reasonable diligence, discovered or should have discovered the cause of action. *KPMG Peat Marwick*, 988 S.W.2d at 750. Claimants' predecessors in interest were placed on notice in the 1930s. The wells on the property, dating from the early 1930s, were clearly visible, and there is no evidence that Anadarko or its predecessors conducted their

---

**21.** Shortly after the letter, Mid–Kansas sold the Nettleton lease to Tidal Oil.

activities in a clandestine manner.[22] This Court has recently held there is no fraudulent concealment when the "well sites were in plain view on the property." *Taub,* 75 S.W.3d at 620. In 1931, Simpson, Claimants' predecessor, signed a well-spacing agreement which noted that the right-of-way was under lease to Gregg Oil. Although Claimants allege they were placed on notice only in 2000, Claimants and their predecessors should have discovered the injury decades ago by using reasonable diligence.

 Claimants produced evidence only that Union Pacific, Anadarko, and their predecessors never told them that Claimants actually owned the Campbell Tract. That is not fraudulent concealment. "A record titleholder's ignorance of what [he or she] owns does not affect the running of limitations." *Pool,* 124 S.W.3d at 198.

In the words of a recent Texas Supreme Court opinion, "[w]e conclude that 'time, which buries in obscurity all human transactions, has achieved its accustomed effects upon this.'" *Chapman,* 118 S.W.3d at 755 (quoting *Prevost v. Gratz,* 19 U.S. (6 Wheat.) 481, 495, 5 L.Ed. 311 (1821)). While Claimants have presented some suspicion that Gregg Oil and Texas & Pacific conspired to commit fraud or other deceptive practices, "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Id.* (quoting *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 927 (Tex. 1993)). Claimants' claims of fraud amount to little more than suspicion based on the unavailability of complete records and witnesses more than seventy years later. In

this case, more than seventy years have passed since apparent oil production began. Many of the corporations involved are no longer in existence, and most of the witnesses are no longer available. Time has indeed obscured the events in question. Because Claimants have failed to present more than a scintilla of evidence of fraudulent concealment and should have discovered the alleged fraud, if any, years ago, we overrule Claimants' point of error.

*(6) Limitations Bars Any Claim for an Accounting for the Production Taken from the Property Before Adverse Possession Title Ripened*

 Although we have determined that the Campbell Tract has been adversely possessed, a remaining issue is whether Claimants can maintain suit for the failure of Union Pacific, Anadarko, and their predecessors to account for production before adverse possession title ripened. Union Pacific and Anadarko both raise a counterpoint alleging that Claimants' claims are barred by limitations. Claimants argue that any statute of limitations was tolled by fraudulent concealment.[23]

Union Pacific and Anadarko argue that the four-year statute of limitations applies to suits for accounting. *See Birdwell v. Am. Bonding Co.,* 337 S.W.2d 120, 128 (Tex.Civ.App.-Fort Worth 1960, writ ref'd n.r.e.); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). However, the Waco Court of Appeals has held that a suit for accounting brought by a cotenant who was not a party to the lease is a suit to recover personal property to which the two-year statute of limitations applies. *Easterling v. Murphey,* 11 S.W.2d 329, 334

---

22. We note, also, that the public record reveals the claims by Defendants or their predecessors. The Texas Supreme Court's 1940 opinion in *Cox* should have put them on notice of the property right which was injured. All of the complained-of actions either were public records or were signed by Claimants' predecessors in interest.

23. Anadarko argues that Claimants failed to plead fraudulent concealment, but fraudulent concealment is directly raised in Claimants' petition.

(Tex.Civ.App.-Waco 1928, writ ref'd) (suit barred by predecessor to current two-year statute of limitations); *see* 55A Tex. Jur.3d *Oil and Gas* § 285 (2004); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon Supp.2005). Regardless of whether the two-year or four-year statute of limitations applies, the Claimants' suit is barred by the statute of limitations.

 A cause of action accrues, for the purposes of limitations, when the claimant's injury occurs. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *KPMG Peat Marwick*, 988 S.W.2d at 748.

Claimants argue that Union Pacific, Anadarko, and their predecessors filed fraudulent tax returns and fraudulent well-spacing documents, fraudulently concealed their duty to account, failed to give notice to Claimants of the well-spacing applications in 1931 and 1936, and failed to correct an error in a letter from Tidal Oil to Gregg Oil. But, as we have discussed above, Claimants failed to present more than a scintilla of evidence of fraudulent concealment. Therefore, the statute of limitations was not tolled. Since the property was adversely possessed as a matter of law more than four years ago, Union Pacific and Anadarko have established as a matter of law that the statute of limitations barred suit on Claimants' claims for the alleged failure to account.

*Conclusion*

Although Claimants have standing to bring suit, their claims are barred by the statute of limitations. T.M. Campbell effectively deeded the Campbell Tract to Turner to the center of the right-of-way. Therefore, when Nettleton granted Union Pacific's predecessor in interest a quitclaim deed to the right-of-way, Union Pacific's predecessor in interest became a cotenant with Claimants. But in the seventy years that have passed since that time, Union Pacific and Anadarko, or their predecessors, have obtained title to Claimants' mineral interest through adverse possession. Claimants had constructive notice of repudiation of the cotenancy and of the Campbell deed, and limitations title has accrued. Last, the four-year statute of limitations bars suit for Union Pacific's and Anadarko's failure to account before the tract was adversely possessed.

We affirm the judgment of the trial court.