Opinion filed June 12, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00083-CV

_____

**DEVON ENERGY PRODUCTION COMPANY, L.P., Appellant**

**V.**

**MCCLURE OIL COMPANY, INC. AND FINA 945 L.C., Appellees**

**AND**

**DRIVER PRODUCTION, L.P. AND GRAHAM SONS MINERALS, LLC, Appellants**

**V.**

**DEVON ENERGY PRODUCTION COMPANY, L.P., ET AL., Appellees**

**On Appeal from the 118th District Court**

**Glasscock County, Texas**

**Trial Court Cause No. 1895**

**O P I N I O N**

This appeal concerns, among other things, the ownership of certain mineral and oil and gas royalty interests in five sections located in Glasscock County, and how a summary judgment movant's pleading irregularities may affect the propriety of a trial court's order that grants relief based on such deficiencies. Central to the parties' dispute is whether a prevailing summary judgment movant is entitled to recover a nonpossessory oil and gas interest when the pleadings that were filed—and relied on by that party at the time the trial court granted relief—do not support the recovery that the moving party requested.

A myriad of claims have been asserted by the parties in this case. The origin of the parties' primary conflict focuses on deed priority—two competing deeds from the same grantor, which purport to convey some of the same interests. Here, the deed that was executed first was the second-in-time to be recorded, and vice versa. The trial court ultimately determined that the first-executed but second-recorded deed (the Dean Deed) prevailed over the second-executed but first-recorded deed (the Boston Deed), rejected the affirmative defenses raised by the successors under the junior deed, and awarded title to the various interests claimed by the successors under the prevailing deed.

Two of the three Appellants in this appeal raise overlapping issues. In four issues, Appellant, Driver Production, L.P., asserts that: (1) the trial court erred when it reversed its long-standing deed-priority order and failed to acknowledge Driver's predecessor's status as a bona fide purchaser (BFP) of the disputed interest, (2) Appellees failed to carry the burden of proof on their trespass-to-try-title claims, (3) the trial court erred when it denied Driver's motion for summary judgment on its affirmative defenses, and (4) the trial court erred when it determined and declared that, alternatively, if the Dean claimants' deed-priority claim failed, their royalty interest survived as a "floating" 1/8 interest.

2

In three issues, Appellant, Graham Sons Minerals, LLC: (1) challenges the trial court's deed-priority determination and its predecessor's status as a BFP, (2) asserts that the royalty reservation in the Boston Deed is a "fixed" rather than a "floating" interest, and (3) contends that if we conclude that the Boston Deed takes priority and reserved a "fixed" royalty interest, it would be entitled to judgment to quiet title to its disputed interest in the south half of Section 21.

Finally, and separately, Appellant, Devon Energy Production Company, L.P.,[1] raises two issues, that the trial court erred when it granted summary judgment against Devon: (1) on its claim for declaratory relief against Appellees, McClure Oil Company, Inc. and Fina 945 L.C., and (2) on grounds not presented in the motion.

We conclude that when the trial court granted a partial summary judgment early in the litigation and found that the Dean Deed prevailed over the Boston Deed (the deed-priority finding), most of the prevailing movants (including most of the Appellees here) had not filed pleadings that supported the relief granted to them. Further, when the trial court subsequently granted summary judgments on other issues in favor of the same movants and in turn incorporated each of its summary judgment rulings in the case into its final judgment that awarded nonpossessory oil and gas interests to the prevailing parties, the original deed priority "pleadings-relief" deficiency infected the trial court's subsequent judgments.

Our analysis that follows includes substantial detail regarding the procedural particulars that developed throughout the progression of this case. This, we believe, is necessary to illustrate why we reach the disposition that we do with respect to each party on appeal. Because the parties to this appeal, which are numerous, advance contrary positions regarding the pleadings-relief issue that we highlight, and the development and exacerbation of this issue over the course of the parties' subsequent

---

[1]Devon is also a Cross-Appellee and an adverse party to Driver and Graham Sons.

motion practice, careful examination of the parties' strategies and arguments is warranted.

To that end, we first review the motion for partial summary judgment that sought a deed priority determination (the deed-priority motion), the pleadings that were filed and relied on by the summary judgment movants at the time the trial court granted that motion, the orders signed by the trial court that incorporated its rulings, and the various arguments advanced by the parties during that stage of the proceedings. We next examine how the impropriety in that summary judgment ruling, and the trial court's orders that followed, affected the subsequent stages of the parties' motion practice, including the motions for summary judgment that addressed affirmative defenses and title claims, throughout which the parties' arguments focused, developed, and shifted around the pleadings-relief issue. We then close the primary portion of this appeal by assessing how the pleadings-relief deficiency in the deed-priority motion affected the trial court's final judgment, as informed by the parties' subsequent motion practice that orbited around that issue. Finally, we address Devon's appeal against McClure and Fina 945.

Thus, we provide an extensive and detailed review of the trial court proceedings because, in some instances, a pleading defect is not fatal to the relief that is granted by a trial court in its final judgment—namely, circumstances that concern the difference between asserting a claim for trespass-to-try-title and one in which a claim for declaratory relief is asserted. But here, we cannot ignore its import to the disposition of this appeal.

Therefore, for the reasons we explain below, we affirm in part, and we reverse and remand in part.

I. *Factual Background*

In 1928, J.V. Heyser owned an undivided one-half of the minerals in Sections 19, 21, 29, 31 and 33, Block 34, T-4-S, T&P Ry. Co. Survey, in Glasscock

County. By a deed dated January 17, 1928, Heyser conveyed to T.J. Dean a "three eighths interest in and to all of the oil, gas, and other minerals in and under and that may be produced from" the property. This deed, referred to by the parties either as the "First Heyser Deed" or the "Dean Deed," was recorded on February 14, 1928. By a second deed, dated February 1, 1928, Heyser conveyed all of his interest in the property to R.L. Boston. This deed, referred to by the parties as either the "Second Heyser Deed" or the "Boston Deed," was recorded on February 4, 1928.

The Boston Deed contains a reservation unto the grantor (Heyser):

three eighths (3/8) of all the oil royalty, gas rentals and royalties which may become due and payable under the present outstanding oil and gas leases upon the above described land, and also reserving to the Grantor herein, three-eighths (3/8) of the usual one-eighth (1/8) royalty in oil and gas in and under all future oil and gas leases which may be placed upon said lands after the cancellation and forfeiture of the present outstanding leases.

Each of the parties to this appeal traces its chain of title to the subject property from either the Dean Deed or the Boston Deed.

The underlying litigation began in 2018 when Laredo Petroleum, Inc., now known as Vital Energy, Inc., filed its petition for interpleader alleging that (1) it was unclear what interests were conveyed by each Heyser deed, (2) as an operator of producing wells in the sections in question, Vital was responsible for the payment of royalty that burdens its working interests in those wells and other wells operated by another company, and (3) it was subject to competing claims by various potential interest owners both as to the ownership of the interests conveyed and reserved in the two Heyser deeds as well as the calculation of the interests owned. Vital explained that because a double fraction was used to reserve the nonparticipating royalty interest (NPRI) in the Boston Deed, and because the current oil and gas leases that covered the property contained royalties greater than one-eighth, it was unclear whether the NPRI should be calculated as a "fixed" or "floating" royalty interest.

5

Vital cited, for instance, a letter from Appellee, SH Permian Minerals, LLC—a Dean successor—to Vital whereby SH Permian asserted that the Dean Deed took precedence over the Boston Deed. SH Permian's letter also asserted that the Heyser NPRI that was recited in the Boston Deed should be calculated as a "floating" NPRI rather than a "fixed" NPRI. To avoid the risk of being subject to multiple liability with respect to the payment of the revenues attributable to the disputed mineral and royalty interests, Vital moved to deposit all disputed funds into the registry of the trial court and be discharged from the suit. The trial court granted Vital's interpleader and motion to deposit funds and dismissed it from the suit.

SH Permian; Pioneer Natural Resources USA, Inc.; Devon Energy Corp.; Driver Production LP; Nail Bay Royalties, LLC;[2] Coly Birds, a Texas general partnership; Barbara Elaine Knoll; Deanna McGrew Lowe; Mary Elizabeth McGrew; and Nancy Seaberry Smith, whom shall collectively be referred to as the "Birds parties," were also joined as defendants in Vital's interpleader action.[3]

Among the Dean-party Appellees, SH Permian, Devon, and the Birds parties claimed an interest in all five sections of the disputed property. Nail Bay claimed an interest only in Section 31. Vital later acquired a portion of Pioneer's claimed interest in Section 21 and reentered the case as an interested party to litigate the nature and quantum of its interest.

With regard to the Boston claimants, Driver purported to own interests in Sections 21 and 33; it did not assert any cause of action against the others but chose

---

[2]Nail Bay Royalties, LLC acted as the "manager/agent" for KRP Legacy NBR, LLC, BRD Royalty Holdings, LLC, and Kimbell Art Foundation, and was the representative party for these entities in the underlying suit. For ease of reference, we refer to these entities at trial and on appeal as "Nail Bay."

[3]Although the record is not entirely clear regarding how and when these parties came to be united and aligned as one group, and also represented by the same counsel, they were awarded interests in all five sections of the disputed property in the trial court's final judgment; they are also identified as Appellees in Driver and Graham Sons' appellate briefs. On appeal, the Birds parties adopted SH Permian's appellate brief and arguments.

instead to answer the cross-claims filed against it and assert various affirmative defenses. Through the same methods, Graham Sons purported to own an interest in Section 29.[4] Although the interest claimed by Graham Sons stems from a different chain of title, it ultimately traces back to Heyser and is affected by the deed-priority determination that is central to the issues that we must address in this appeal.[5]

Over time, the underlying suit progressed through a series of motions for summary judgment, which essentially resulted in a three-part sequence of rulings by the trial court that determined (1) the priority of the Dean and Boston Deeds and the construction of the Boston Deed, (2) whether the Dean parties' trespass-to-try-title claims, and the Boston parties' related affirmative defenses, failed, and (3) title to the disputed interests and the entry of a final judgment.

In addition to their arguments on the merits, on appeal Driver raises several procedural complaints concerning the timing, nature, and substance of the parties' pleadings and of certain motions that were filed throughout the duration of the litigation, particularly with respect to SH Permian's deed-priority motion, which the other Dean parties adopted or joined, and which the trial court granted. In sum, the focus of Driver's procedural complaints is that all of the trial court's rulings—including its rulings on title and the entry of a final judgment—that were made

---

[4]Pioneer initially claimed an interest in all five sections but later settled with and dismissed its claim against Driver as to Section 33. Pioneer maintained its claims as to Sections 19, 29, and 31, and was awarded interests in them in the trial court's final judgment. After this appeal was filed, a Boston party (the Benella parties) that was adverse to Pioneer settled its claims and moved to dismiss its appeal, which we granted. Pioneer and SH Permian filed a joint appellate brief in response to Graham Sons' appeal, but those parties subsequently settled the claims and controversies between them and moved to dismiss their appeals as to each other as well, which we granted. Consequently, Pioneer is no longer a party to this appeal, and Devon is the only remaining party on appeal that is adverse to Graham Sons.

[5]Because the dispute regarding the Graham Sons centered on a competing claim by another Boston successor, its success necessarily depended on the Boston Deed prevailing over the Dean Deed. Consequently, Graham Sons asserted as an affirmative defense that Boston was a BFP without notice of the unrecorded Dean Deed, thereby aligning with Driver.

subsequent to and based on its initial deed-priority ruling are fatally flawed and should be reversed.

## II. *Standard of Review*

We review a trial court's grant of summary judgment de novo. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 837 (Tex. 2018). We review a no-evidence motion for summary judgment under the same legal sufficiency standard that we use when reviewing the grant of a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Pursuant to this standard, and "[t]o defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *see* TEX. R. CIV. P. 166a(i). Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion of a fact." *KMS Retail*, 593 S.W.3d at 181 (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). For a trial court to grant a defendant's traditional motion, the defendant must conclusively negate at least one essential element of the cause of action being asserted by the plaintiff or conclusively establish each element of a defense or an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). If the movant meets its summary judgment burden, then the burden shifts to the nonmovant to present the trial court any issues or evidence that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail*, 593 S.W.3d at 181. We credit favorable inferences to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### III. *Pleading and Procedural Deficiencies*

Driver argues that, procedurally, the Dean parties were required to (1) prosecute their asserted claims exclusively as trespass-to-try-title actions, (2) establish their right to title under the pleading and evidentiary rules that govern trespass-to-try-title actions, and (3) do so entirely in their first motion for partial summary judgment—the deed-priority motion—because a ruling that the Dean Deed prevailed over the Boston Deed would necessarily divest Driver and the other Boston parties of title to real property. In this regard, Driver argues that the trial court erred when it granted the Dean parties' deed-priority motion because (1) their motion sought relief that was not supported by their pleadings, and (2) the Dean parties failed to carry their burden to establish their title under the trespass-to-try-title pleading and evidentiary rules.

After the trial court granted the Dean parties' motion, and throughout the remainder of the case, Driver repeatedly urged and re-urged that the Dean parties' deed-priority motion was fatally flawed both procedurally and on the merits. As the case progressed, the Dean parties relied on and expressly incorporated the trial

court's summary judgment order, which found deed priority in their favor, into their subsequent motions for summary judgment that challenged the Boston parties' affirmative defenses and supported the Dean parties right to legal title to the interests they claimed. As such, Driver reasons that the trial court's final judgment is erroneous and ultimately "built on a house of cards," because it was based on and resulted from its "faulty summary-judgment orders" on the Dean parties' fatally flawed subsequent motions.

Driver's numerous procedural complaints most closely concern its second issue—whether the Dean-party Appellees failed to carry their burden of proof on their trespass-to-try-title claims. We begin here because we agree with Driver that the presence of certain procedural deficiencies requires a partial reversal of the trial court's final judgment before we reach the merits of the parties' dispute, namely that the pleadings of the Dean-party Appellees, with the exception of Nail Bay, do not support the relief granted to them in the final judgment. As we explain below, although the complaint about the Dean parties' deficient pleadings and the relief they requested has been raised *ad nauseam* by Driver, it is clear that the cumulative effect of the trial court's rulings resulted in most of the Dean parties being awarded nonpossessory interests in the subject property, based on the trespass-to-try-title claims asserted by them, which is not the appropriate method in which to recover a nonpossessory interest. *See Lance v. Robinson*, 543 S.W.3d 723, 734–37 (Tex. 2018); *Lockhart as Tr. of Lockhart Family Bypass Tr. v. Chisos Minerals, LLC*, 621 S.W.3d 89, 100 (Tex. App.—El Paso 2021, pet. denied); *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 210 (Tex. App.—Texarkana 2006, pet. denied); *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. App.—Austin 1983, writ ref'd n.r.e.).

Therefore, because the trial court's final judgment and the relief it granted is not supported by the pleadings as to each of these parties, it cannot stand. TEX. R.

CIV. P. 301; *see Moran v. Williamson*, 498 S.W.3d 85, 93–94 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). However, we disagree with Driver's assertion that, as a consequence, these procedural deficiencies should vest title to the disputed property in them.

A. *Summary Judgment on Deed Priority*

The origin of the deed-priority dispute is SH Permian's deed-priority motion, the causes of action alleged in SH Permian's live cross-claim that was filed at the time the trial court granted SH Permian's motion, and the various adoptions and joinders of those filings by the other Dean parties.

In our disposition, we focus primarily on SH Permian's apparent strategy in filing the deed-priority motion. The conduct of the Dean parties is equally important because most of them followed SH Permian's lead throughout the case by adopting or joining not only the deed-priority motion, but also various other SH Permian filings, including its pleadings and dispositive motions. Moreover, and as we will discuss, as this case developed, SH Permian and Driver engaged in protracted procedural arguments, including whether SH Permian (1) had asserted the proper cause of action at the time its motion was granted, (2) requested relief in its motion that was supported by its pleadings, and (3) was required to prove its entire trespass-to-try-title claim in *this* motion for partial summary judgment.

We trace the parties' exchanges in some detail below. However, to highlight the point: at the time the trial court granted SH Permian's motion for partial summary judgment on deed priority, the parties had thoroughly briefed, argued, and presented to the trial court their respective positions regarding the asserted claims, causes of action, requested relief, and procedural posture of the case. SH Permian's live pleading on file (its second amended cross-claim) at the time the trial court granted SH Permian's deed-priority motion, supplemental motion for partial summary judgment on deed priority, and supporting arguments all demonstrate its choice to

11

commit to a posture of explicitly relying on discrete theories of recovery: if the trial court determined that the Dean Deed prevailed, which SH Permian argued that it should, SH Permian advanced a trespass-to-try-title claim *only*; however, if the Boston Deed prevailed, it sought declaratory relief.

### 1. *SH Permian's Pleadings*

In its original cross-claim, SH Permian only sought declaratory relief and requested that the trial court find that (1) the Dean Deed took priority over the Boston Deed and, in the alternative, (2) the NPRI reservation in the Boston Deed reserved a floating NPRI to the grantor. SH Permian asserted that under the Dean Deed it owned an undivided 1/8 mineral interest in all five sections of the disputed property, and under the reserved NPRI it owned a "floating" NPRI equal to 1/8 of the royalty rates in the current oil and gas leases covering the property. On the other hand, Devon filed its original cross-claim and asserted claims for both trespass to try title and declaratory judgment. Like SH Permian, Devon claimed it owned an undivided 1/8 mineral interest in all five sections and, at minimum, a "floating" 1/8 NPRI. Nail Bay filed its original cross-claim and, like Devon, asserted claims for trespass to try title and declaratory judgment. Nail Bay also claimed a mineral interest in Section 31 only, or alternatively a "floating" NPRI.

After filing their cross-claims, SH Permian and Pioneer moved for partial summary judgment on the issue of deed priority and requested that the trial court *declare* that the Dean Deed conveyed an undivided 3/8 mineral interest to T.J. Dean, and that the Boston Deed thus conveyed an undivided 1/8 mineral interest to R.L. Boston, being all of the mineral interest in the subject property that was owned by Heyser at the time because he had already conveyed to Dean. In the alternative, SH Permian requested that the trial court *construe* the NPRI reserved in the Boston Deed to be "floating." The only evidence that was submitted in support of this motion

were copies of the Dean and Boston Deeds.[6]  All of the other Dean parties, with the exception of Vital, eventually joined or adopted this motion.  Importantly, Nail Bay conditionally adopted this motion because, unlike SH Permian at the time, Nail Bay had pleaded a trespass-to-try-title claim.  Nail Bay contended that the arguments in SH Permian's motion regarding the parties' rights and interests applied equally to both of Nail Bay's claims, and that Nail Bay's adoption was explicitly "based on the foregoing understanding."

From this juncture, Driver, Graham Sons, and SH Permian extensively debated (1) whether SH Permian had asserted the proper cause of action to support its claim and (2) the propriety of the associated motion on deed priority.[7]  Before the trial court ruled on the deed-priority motion, SH Permian twice amended its cross-claim and ultimately asserted its reliance on trespass to try title if the trial court determined that the Dean Deed prevailed; it also requested declaratory relief in "the unlikely event" that the Boston Deed prevailed, in which case it requested that the trial court declare that the NPRI reservation in the Boston Deed was "floating."  Thus, SH Permian's second amended cross-claim was its live pleading when the trial court granted the motion for partial summary judgment on deed priority in favor of the Dean parties.

---

[6]SH Permian filed its abstract of title with the trial court soon after.

[7]Around this time, Driver also moved for a no-evidence and traditional partial summary judgment and argued that (1) it was undisputed that the Boston Deed was recorded first, and (2) the Dean parties had not produced any evidence that Boston was not a BFP.  Graham Sons joined in and adopted this motion. SH Permian responded that (1) it had filed its abstract of title with the trial court, which constituted evidence that it was a successor to Dean, (2) Section 13.001 of the Property Code provides that an unrecorded instrument is binding on a party to the instrument and on a subsequent purchaser who is not a BFP, and (3) the burden was on Driver to prove that its predecessor, Boston, was entitled to BFP status.  The trial court denied Driver's motion when it granted the Dean parties' motion for partial summary judgment on deed priority.

## 2. *The Motion on Deed Priority*

After SH Permian filed its second amended cross-claim, Driver and Graham Sons objected and argued that the relief requested in the deed-priority motion now lacked support in the Dean parties' pleadings. SH Permian's contention on this point was that a determination of deed priority was a question of law that the trial court could rule upon regardless of the underlying pleaded cause of action. According to SH Permian, the deed-priority motion did not seek an adjudication of title, but simply an interlocutory ruling that would narrow the remaining issues in the case: whichever of the two competing deeds prevailed, the Dean parties still would be required to establish their right to the interests they claimed. Moreover, to the extent it was necessary, SH Permian noted that, at that time, all of its claims could be construed as trespass-to-try-title claims.

After a hearing, the trial court granted SH Permian leave to supplement its deed-priority motion. It also granted, in an e-mail to the parties, a continuance to permit SH Permian "to clean up [its] pleadings (if [it] feels that is necessary) and supplement [its] MSJ as requested." In light of this, the trial court provided new submission and responsive deadlines for all of the parties but did not permit the parties to submit additional evidence.

When SH Permian filed its second supplemental motion on deed priority, it provided an important and clear explanation of its requested relief, and the pleadings that it contended supported it. In simple terms, SH Permian explained that its "claims with respect to the [Dean Deed] are brought as a trespass to try title action." It further clarified that its "claims with respect to the meaning and construction of the [Boston Deed] are brought under the Declaratory Judgment Act." Based on these representations, SH Permian requested that the trial court grant the relief requested in its motion as supplemented.

As the procedural battle over SH Permian's deed-priority motion played out, Devon generally joined SH Permian's replies and responses to the Boston parties' objections and arguments, including both of SH Permian's supplemental motions for partial summary judgment. After the trial court granted the motion on deed priority in favor of the Dean parties, it signed a separate order of the grant as to Devon. Devon's live pleading at that time was its first amended cross-claim, which asserted a request for declaratory relief and a trespass-to-try-title claim seeking a 1/8 mineral interest. Although Nail Bay conditionally adopted SH Permian's original motion on deed priority, the record does not show that Nail Bay adopted SH Permian's second supplement to the motion.

In response to SH Permian's second supplemental motion, Driver contended that, because SH Permian had clarified that it no longer sought a declaratory judgment with respect to the Dean Deed, the trial court should deny SH Permian's motion "for a declaration of title" and grant Driver's no-evidence and traditional motions for summary judgment as to SH Permian's "request for declaration of title."

After these submissions, the trial court e-mailed the parties that SH Permian's motion for partial summary judgment on deed priority would be granted.

3. *Orders Granting the Motion on Deed Priority*

The procedural dispute continued, and now it centered on the form of the order that the trial court would sign. SH Permian submitted proposed orders, and Driver objected that they did not specify the grounds on which summary judgment would be granted. Driver explained that although the trial court was not obliged to do so, in light of the numerous filings and the change in positions and claims by SH Permian that preceded the trial court's deed-priority ruling, it believed that the trial court should specify the grounds upon which relief would be granted. Driver also objected to the proposed orders because they did not specify whether summary judgment was also granted to the parties who had adopted or joined SH Permian's

15

motion—Driver had previously raised objections to these parties' adoptions and joinders on the ground that some had not filed any pleadings for affirmative relief.

In response, SH Permian stated that "[u]nless Driver is offering to stipulate to SH Permian's . . . chain of title, a trial on the merits is necessary to prove the title claimed." SH Permian also emphasized that it had made clear that the relief it sought in its deed-priority motion was specific and interlocutory; it was not seeking an adjudication of title or a final judgment. To this, Driver replied that SH Permian had clearly pleaded two distinct causes of action: (1) trespass to try title as to the interest allegedly conveyed by the Dean Deed, and (2) a request for declaratory relief construing the Boston Deed's NPRI reservation. Driver argued that SH Permian had moved for summary judgment on both claims and thus the trial court should indicate on which ground it was granting relief, and it submitted various alternative proposed orders for the trial court's consideration.

Counsel for Driver also sent a letter to the trial court which sought to "distill the issues underlying the various competing proposed orders to their simplest terms." Counsel explained that, in SH Permian's prior, now-superseded pleadings, it had attempted to "keep [its] options open" regarding the deed-priority issue by pleading for declaratory relief in the alternative. Counsel stated that SH Permian's latest arguments that the deed-priority motion only sought an interlocutory determination was improper because it attempted to revive the declaratory relief SH Permian had disavowed in its second amended cross-claim, which was its live pleading at the time the trial court granted the motion. Counsel pointed out that, although the trial court allowed SH Permian the opportunity to "clean up [its] pleadings (if [it] feels that is necessary)," SH Permian had declined the trial court's invitation, and instead did not replead its alternative claim for declaratory relief regarding the Dean Deed's priority over the Boston Deed, and that this remained an improper avenue for a claim seeking an award of title. Counsel also reiterated Driver's position that the strict, specific,

16

and unique rules for trespass-to-try-title actions required SH Permian to prove its entire claim for title under the Dean Deed in its deed-priority motion. Thus, counsel for Driver argued that all of these issues weighed in favor of the trial court signing an order that specified the grounds on which it was granting SH Permian's motion for partial summary judgment on deed priority.

The trial court subsequently signed two orders, one that granted SH Permian's deed-priority motion and Nail Bay's adoption of the motion "in all respects" and denied Driver's no-evidence and traditional motions for summary judgment, and another that granted the same motion as to Devon pursuant to Devon's previously filed joinder, which we discuss further below.

B. *The Pleading-Relief Issues Persist Throughout the Case*

Sometime later, Driver filed a traditional motion for partial summary judgment that challenged SH Permian's trespass-to-try-title claim, and all Dean-party adopters. Driver specified that it believed the trial court's previous ruling and orders regarding the deed-priority motion were erroneous, that it did not waive its arguments to it, and that it objected to the Dean parties' reliance on the prior order on deed priority. Further, contending that the trial court's order on deed priority was erroneous, Driver reasserted its argument that the Boston Deed interrupted SH Permian's chain of title and asserted other merits contentions regarding SH Permian's chain of title. Driver also filed a separate, but similar motion against Devon.

Driver also contended that its multitude of affirmative defenses—especially adverse possession—defeated SH Permian's and Devon's claims. As it pertained to its adverse possession defense, Driver reasoned that by pleading a trespass-to-try-

17

title claim, SH Permian judicially admitted that the mineral interest they claimed had been adversely possessed by Driver.

1. *SH Permian and Devon Characterize Their Claimed Interests as Nonpossessory*

SH Permian responded and stated that the instruments in its chain of title showed that it owned "***a mineral interest equal to an undivided 1/8th royalty interest*** in and to all of the oil, gas and other minerals in and under or that may be produced from the Subject Property." (emphasis added). SH Permian noted that this claim, along with its alternative claim for a "floating" NPRI from the Boston Deed reservation, in either respect amounted to a right to a share of production "calculated as a fraction (1/8) of a 1/4th royalty" (SH Permian claimed that the current oil and gas leases on the property provided for a 1/4 royalty). From what we can ascertain from the voluminous record, the statements made in this response was the first time that SH Permian had asserted or represented that its interest under the Dean Deed constituted a mineral interest that was stripped of all attributes, with the exception of the right to receive royalty.

SH Permian further responded to Driver's allegations of the break in its chain of title and, in response to Driver's affirmative defenses, argued, among other things, that Driver's adverse possession defenses failed because (1) compliance with the pleading requirements in a trespass-to-try-title action is required even if the allegations are fictitious, thus such compliance does not constitute a judicial admission that Driver had adversely possessed SH Permian's claimed interest, and (2) title by adverse possession is not available against a nonpossessory interest, such as SH Permian's now-claimed interest.

In a similar vein, Devon amended its cross-claim several times after the trial court's grant of SH Permian's deed-priority motion, while maintaining both of its asserted causes of action. However, Devon eventually came to characterize the

18

interest it claimed as either a "floating NPRI equal to 4% of the royalty rates in the current oil and gas leases," or "an undivided 4% floating royalty interest." Thus, in its response to Devon's motion for summary judgment on its trespass-to-try-title claim, Devon argued that it claimed a nonpossessory NPRI that was not subject to adverse possession.

Driver responded that SH Permian could not freely move between mutually exclusive theories, namely that they own mineral interests under the prevailing Dean Deed, or that they own a NPRI through the reservation in the Boston Deed. Driver contended that the two theories cannot coexist, that SH Permian was granted summary judgment on both, and that by first requesting in their motion a determination that it owned mineral interests under the prevailing Dean Deed, the election of remedies doctrine thus estopped them from claiming otherwise. Further, SH Permian could not, Driver complained, now waffle between whether it claimed a possessory or a nonpossessory interest. Driver argued:

> [W]hen it involves proving [its] underlying trespass to try title claim, [it] claim[s] that a mineral interest with only the right to royalty is still a mineral interest, but when defending that interest against an adverse possession claim, [it] shift[s] gears and claim[s] that it is only a royalty interest, which is a nonpossessory claim not subject to adverse possession.

The trial court held a hearing on Driver's motion for partial summary judgment, and the parties engaged in a prolonged discussion regarding the exact interests that SH Permian and Devon were claiming. Driver renewed its long-running argument that the trial court's prior ruling on deed priority was erroneous. It also argued that because SH Permian had prevailed on the deed-priority issue based on a trespass-to-try-title claim it could not subsequently defeat Driver's adverse possession defense by now asserting that the interest it claimed was nonpossessory. Driver further contended that the instruments in SH Permian's chain

19

of title showed that it was entitled to a royalty interest, not a mineral interest, which would foreclose SH Permian's trespass-to-try-title claim. Driver advanced a similar argument against Devon because of its joinder with SH Permian's supplemental motion.

SH Permian responded that a mineral interest may be stripped of its five traditional attributes and that the instruments in its chain of title did remove certain attributes; however, it still retained a mineral interest with the right to receive a royalty. SH Permian reasoned that this nonpossessory mineral interest could not be subject to adverse possession. It also averred that the election of remedies doctrine only applies when a final judgment is challenged, not to interlocutory phases of pretrial motion practice.

Driver disputed SH Permian's construction of the deeds and instruments in its chain of title and contended that if they showed a "stripped" mineral interest with only the right to receive a royalty, then such an interest is different than a possessory mineral interest—in fact, Driver argued, it constitutes a contractual right that is tied to a lease. Driver went on to point out that SH Permian created this dichotomy in its pleadings and deed-priority motion when it claimed a possessory mineral interest in trespass to try title through the Dean Deed, and that it was now bound by that dichotomy. After the hearing, the trial court denied Driver's motion.[8]

### 2. *Vital Intervenes as a Dean Party*

Around this time, Vital intervened in the case after it acquired a portion of Pioneer's disputed interest in Section 21. Vital filed a cross-claim in which it asserted a claim in trespass to try title and also sought declaratory relief. Vital stated

---

[8]SH Permian subsequently filed a no-evidence and traditional motion for partial summary judgment that challenged Driver's affirmative defenses of adverse possession, acquiescence, waiver, equitable estoppel, quasi-estoppel, ratification, laches, disclaimer, and acceptance of benefits. The trial court granted SH Permian's motion.

that it did not take a position regarding the parties' broader title disputes but, so that it could recover the appropriate interest in Section 21 based on the trial court's rulings, it asserted cross-claims against Driver.

Driver answered, specially excepted, and asserted a laundry list of affirmative defenses to Vital's intervention. Importantly, Driver contended that, to the extent the trial court deemed Vital to have stepped into the shoes of Pioneer with respect to the parties' prior pleadings and the trial court's prior rulings in the case, Driver's previous answer to the Dean parties' cross-claims also applied to Vital's cross-claim. In its special exceptions Driver complained that Vital's statement that it took "no position" on the parties' title dispute was untrue, and that declaratory relief and alternative theories of recovery were improper in this case.

Vital responded that it did not argue which deed should take precedence over the other, nor whether the reservation in the Boston Deed was a fixed or floating interest; rather, it asserted its cross-claims so that the nature and quantum of its acquired interest in Section 21 could be adjudicated by the trial court. Further, Vital argued that its declaratory judgment action was proper, even if it resulted in the adjudication of title, and that if it was improper we could treat it as a proper trespass-to-try-title claim. The trial court overruled Driver's special exceptions.[9]

### 3. *Nail Bay is Granted Summary Judgment on Legal Title*

After the trial court granted SH Permian's deed-priority motion, it granted Nail Bay's motion for partial summary judgment on all affirmative defenses raised by the Boston parties that claimed adversely to Nail Bay's claim in Section 31 (none of those Boston parties are present in this appeal). Nail Bay then moved for

---

[9]Vital, Devon, and the Birds parties jointly moved for partial summary judgment on Driver's affirmative defenses. These parties argued, among other things, that Driver's adverse-possession claim failed because they claimed nonpossessory mineral interests that were stripped of all attributes except the right to receive royalty, which is not subject to adverse possession. The trial court granted this motion.

summary judgment on its title to the interest it claimed in Section 31. Although the record does not contain the trial court's order granting this motion, the trial court's final judgment recites that it was granted on June 6, 2022, approximately three months after the motion was filed. The final judgment awards Nail Bay an undivided 1/16 mineral interest in Section 31.

### 4. *SH Permian Attempts to Cure the Pleading-Relief Issues*

Approximately two and one-half years after the trial court granted summary judgment in favor of SH Permian on the deed-priority issue, SH Permian filed its fourth amended cross-claim and motion for leave to file this pleading. The Birds parties adopted the motion for leave and Devon joined.

Driver objected and moved to strike SH Permian's fourth amended cross-claim. It argued that the controlling pleading deadline had long since passed (by years), and that SH Permian was now attempting to substantively replead by bolstering its trespass-to-try-title claim and in turn join a request for declaratory relief regarding the interests SH Permian claimed under the Dean Deed, years after the trial court had already granted summary judgment in SH Permian's favor on the deed-priority issue.

Driver once again recounted the procedural battle that had engulfed the pleadings and the deed-priority motion throughout the case—including restating that SH Permian had clearly committed to a trespass-to-try-title cause of action if the trial court found that the Dean Deed prevailed, which it did over Driver's repeated objections. Now, Driver complained, SH Permian sought to amend its pleadings to include language in an effort to "clean up" its trespass-to-try-title allegations *and* language that effectively joined a request for declaratory relief regarding its interest if the Dean Deed prevailed. The complained-of declaratory relief language is reproduced below:

a.  Find and declare that the First Heyser Deed takes priority over the Second Heyser Deed;

b.  In the event the Court determines that the First Heyser Deed prevails over the Second Heyser Deed, find and declare the nature and quantum of SH Permian's interest in the Property, including SH Permian's portion of the Disputed Interest;

c.  In the event that the Court determines that the Second Heyser Deed prevails over the First Heyser Deed, find and declare that the Second Heyser Deed reserved to Grantor a floating NPRI equal to three-eights (3/8th) of the royalty rates in the current oil and gas leases covering the Property, and further determine SH Permian's interest..

The trial court held a hearing on the motion for leave. There, Driver emphasized, again, that the dispute regarding the appropriate theory of relief—trespass to try title versus declaratory judgment—had been thoroughly and exhaustively addressed by the parties years ago via the partial summary judgment on deed priority, and that the parties had subsequently relied on the trial court's summary judgment ruling and order that emerged from that stage of the litigation. Moreover, Driver argued that a pleading amendment at this point in the case would not cure any purported error because the trial court's deed-priority ruling was made and based on the pleadings that were on file at the time it ruled. Driver also noted that when the deed-priority motion was pending, and before the trial court had ruled on the motion, the trial court afforded the parties the opportunity to "clean up" their pleadings and motion in light of these very disputes, but SH Permian had nonetheless declined and maintained its position. Driver contended that the issue then, as it is now, was that a significant difference existed between the two asserted causes of action—trespass to try title and declaratory judgment—and that because it was granted summary judgment, SH Permian was bound by the resulting consequences of the trial court's deed-priority ruling.

SH Permian contended that its proposed pleading amendment was merely procedural, not substantive, and that it was only wanting to avoid a "procedural

'gotcha.'" SH Permian then stated that "[i]t also became apparent that over the course of time and of reevaluating and evaluating of the title here, that . . . SH Permian . . . [is] claiming a nonpossessory mineral interest" and "when [it] first got into this case it was kind of unclear as to what this interest was." SH Permian explained that because of the dispute over whether it was claiming a possessory or nonpossessory interest, SH Permian chose to "change[] the way that the request for declaratory relief reads." SH Permian argued that its proposed pleading amendment only requested that, in the event the trial court affirmed that the Dean Deed prevailed, it should then find and declare the nature and quantum of SH Permian's interest, that is, whether it was possessory or nonpossessory. SH Permian further argued that its proposed pleading amendment would not affect the trial court's prior summary judgment order on deed priority because that order (1) was interlocutory, (2) concerned a discrete question of law, and (3) was not dependent on the type of cause of action asserted for its resolution. After the hearing, the trial court denied SH Permian's motion for leave to file its fourth amended cross-claim.

SH Permian subsequently filed a motion to reconsider and argued that its proposed pleading amendment did not seek to change SH Permian's theory of recovery, and that the amendment did not impact the trial court's prior summary judgment ruling and order on deed priority.

In its response, Driver emphasized that it had repeatedly argued—both before and after the trial court granted summary judgment on deed priority in favor of SH Permian—that SH Permian's pleaded causes of action and requested relief were inconsistent and did not align, and that SH Permian had failed to carry its burden under trespass to try title, its only pleaded cause of action at the time the trial court ruled on the deed-priority motion. Moreover, Driver pointed out, again, that the trial court even afforded SH Permian the opportunity to "clean up" its pleadings if it felt that it was necessary to do so, yet SH Permian declined and instead maintained its

24

position of alternative, discrete causes of action, which were dependent on which deed prevailed. Driver urged that, when the trial court granted summary judgment on deed priority in favor of SH Permian, over Driver's numerous objections, the result was either that (1) SH Permian received what it pleaded for, a partial summary judgment that granted its trespass-to-try-title claim, or (2) the summary judgment order did not grant *any* relief to SH Permian because there was no pleaded request for declaratory relief to support the grant of summary judgment in its favor. In conclusion, Driver argued that because SH Permian had previously secured a finding that the Dean Deed prevailed, there was no need for it to amend its pleadings now to ask for relief that had already been granted to it. Driver also objected to Devon and the Birds parties joining and adopting the motion for leave.

The trial court granted SH Permian's motion to reconsider and granted leave for SH Permian, Devon, and the Birds parties to file amended pleadings consistent with their requests. SH Permian thereafter filed its fourth amended cross-claim, which Devon and the Birds parties joined.[10] Vital did not join SH Permian's fourth amended cross-claim.

5. *Nonpossessory Interests are Granted in Trespass to Try Title*

Finally, SH Permian and the other Dean-party Appellees separately filed motions for summary judgment concerning legal title to their claimed interests. All motions for title determination, except for Vital's, expressly relied on the trial court's 2019 summary judgment order regarding deed priority. In its motion, Vital asked the trial court to determine deed priority and asserted that, if the trial court ruled that the Dean Deed prevailed, Vital would be entitled to judgment on its trespass-to-try-title claim for a 67.2/640 undivided mineral interest in Section 21, stripped of the

---

[10]Although the state of their claims for affirmative relief, if any, prior to joining SH Permian's fourth amended cross-claim is unclear from the record, the Birds parties supplemented their joinder to specify the interests they claimed—all of which were royalty interests.

rights to execute oil and gas leases and to receive bonus and delay rentals. Devon's motion specifically did not request relief in trespass to try title but requested a declaratory judgment that it owned 4% of a 3/16 "floating" NPRI in the property.

Driver and Graham Sons responded to these title motions and filed competing motions for title based on the alleged failure of the Dean claimants' claims for title; they also re-urged their objections to the trial court's 2019 summary judgment order on deed priority. Further, they filed motions for reconsideration of that order, re-urging their previous objections and arguments, which the trial court denied.

The trial court granted the Dean-party Appellees' title motions. These rulings and all of the trial court's prior orders and rulings were merged into a final judgment. The final judgment, among other things, declared and awarded the quantum and nature of each parties' interest in the property: (1) for SH Permian, Pioneer, and Vital, a "mineral interest, stripped of the right to execute oil and gas leases, and the right to receive bonus and delay rentals"; (2) for Devon and the Birds parties, various royalty interests; and (3) for Nail Bay, a mineral interest in Section 31.

Driver filed a motion for new trial and motion for reconsideration, which Graham Sons joined. SH Permian responded to Driver's motions and Devon joined. Vital filed its own response and stated that the prior summary judgment orders on deed priority were binding on it when it filed its plea in intervention, and that it was entitled to rely on those orders because an intervenor must take the case as it finds it. The trial court denied the motion for new trial and motion for reconsideration, and this appeal followed.

C. *Analysis: The Final Judgment is Unsupported by the Pleadings as to All Dean-Party Appellees Except Nail Bay*

Although courts are entitled to consider, in circumstances such as these, the substance rather than the form of a party's pleadings to determine whether an action is properly grounded in and considered as one for declaratory judgment or trespass

26

to try title, we cannot ignore that issue here—an issue which the parties have exhaustively argued. *See Brumley v. McDuff*, 616 S.W.3d 826, 831–33 (Tex. 2021). We recounted the procedural history and posture of this case in detail to demonstrate that fact. And though we can conceive of similar scenarios in which the procedural deficiencies that are present here would not be fatal to a party's claim, the facts before us appear to preclude such hypotheticals.

Driver contends on appeal, as it did in the trial court below, that the Dean-party Appellees were required to plead either a trespass-to-try-title action or a declaratory judgment action before they could properly secure a summary judgment determination of the competing deeds' priority. Driver further contends that, to prevail, the Dean-party Appellees were required to present and prove their entire case and adjudicate title in their deed-priority motion. We disagree with Driver's contentions.

As SH Permian argued at times before the trial court, the interlocutory determination of deed priority did not absolutely require a party's commitment to one cause of action or the other. Rule 166a of the Texas Rules of Civil Procedure permits a party seeking relief to obtain a summary judgment "upon all or any part" of a "claim . . . or cross-claim." TEX. R. CIV. P. 166a(a). The unique rules that govern trespass-to-try-title actions do not prohibit a trial court from ruling on some aspects of a trespass-to-try-title claim through a partial summary judgment. *See* TEX. R. CIV. P. 783–809. In fact, Rule 795 provides that, except as otherwise provided by the trespass-to-try-title rules, such a claim shall be resolved "according to the rules of pleading, practice and evidence in other cases." TEX. R. CIV. P. 795. Moreover, the conclusive effect of a trespass-to-try-title action arises only upon the entry of a *final* judgment that establishes title or the right to possession. TEX. PROP. CODE ANN. § 22.003 (West 2023). As such, the rules of civil procedure and the provisions of the Property Code governing trespass-to-try-title actions simply do not

preclude the trial court from granting partial summary judgments or making other interlocutory rulings.

Though they need not have done so, the Dean-party Appellees clearly asserted claims for trespass to try title *only*, in the event the trial court determined that the Dean Deed took precedence over the Boston Deed, which, as we have said, it did. SH Permian did so by filing its second amended cross-claim and its second supplemental motion for partial summary judgment on deed priority; in both filings it unequivocally and exclusively asserted and relied on a trespass-to-try-title claim as the basis for its recovery. The Birds parties adopted SH Permian's filings.[11] Despite having filed its cross-claim in which it had asserted and retained a claim for declaratory relief at the time the trial court granted the deed-priority motion, Devon nonetheless joined SH Permian's second supplemental motion, without condition or modification.

Thus, when the trial court granted the deed-priority motion and found that the Dean Deed took precedence, and thereafter signed its order—even after many filings addressed what the properly pleaded cause of action and the proper relief to be requested should be—the Dean-party Appellees effectively received a ruling on their asserted trespass-to-try-title claim under the Dean Deed. Although the trial court's order recited that the motion was granted "in all respects," their live pleadings and motion as supplemented did not explicitly assert a claim for declaratory relief if the Dean Deed took precedence—only trespass to try title was alleged. Consequently, because this issue was thoroughly addressed by all parties prior to and following the trial court's deed-priority ruling, the Dean-party Appellees were bound by the

---

[11]As we previously noted, the state of the Birds parties' pleadings is unclear from the record, and they were not included in the trial court's orders on deed priority. However, they have clearly tied their fortunes to SH Permian's through their joinder and adoptions of SH Permian's filings and arguments, both in the trial court and on appeal.

parameters of that order. *See* TEX. R. CIV. P. 166a(a), (c) ("The motion for summary judgment . . . shall be rendered . . . if . . . (ii) the *pleadings* . . . show that . . . the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion.") (emphasis added); *Houle v. Casillas*, 594 S.W.3d 524, 541 (Tex. App.—El Paso 2019, no pet.) ("[A party] may only move for summary judgment on a cause of action that has been actually pleaded. . . . Moreover, it is fundamental that the motion for summary judgment must be supported by the pleadings on file, and the final judgment of the court must conform to those pleadings.") (internal citations omitted).

In this instance, the trial court could have, in its discretion, modified, reconsidered, or withdrawn its interlocutory order on deed priority at any time before its plenary power expired to allow the parties the opportunity to correct these pleading deficiencies once they became apparent.[12] *See Rush v. Barrios*, 56 S.W.3d 88, 98 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("A trial court has the inherent authority to change or modify any interlocutory order or judgment until the judgment becomes final."); *see also Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993); *OHK Global, Inc. v. Motaghi*, 679 S.W.3d 738, 743–45 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (although it does not have an obligation to do so, the trial court may revisit or set aside its interlocutory, partial summary judgment ruling). Here, it did not, despite the multiple requests and motions to reconsider the order it had signed. A trial court's grant of a partial summary judgment is final "in

---

[12]Nor did the trial court's final judgment implicitly or necessarily reverse its interlocutory order. *See Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 924 (Tex. 2011) (holding that the final judgment impliedly and necessarily replaced the interlocutory summary judgment order which was merged into the final judgment); *Martinez v. SeaHarbor Ins. Agency, LLC*, No. 05-23-00513-CV, 2024 WL 396630, at *4 (Tex. App.—Dallas Feb. 2, 2024, no pet.) (mem. op.) (holding that the final judgment did not reference the prior summary judgment order in [a]ppellant's favor, but necessarily and impliedly reversed or vacated that prior interlocutory ruling where it was inconsistent with the relief that was included in the prior summary judgment). Here, the trial court's final judgment explicitly relied upon, incorporated, and merged its interlocutory order on deed priority into its final judgment.

the limited sense of having disposed of the issues in question, unless the trial court later changes, modifies, or sets aside its summary-judgment order." *OHK Global*, 679 S.W.3d at 743. Thus, Driver's continuous complaints about this in subsequent stages of the underlying litigation were warranted and necessary—they had no other recourse, beyond appellate review, to rectify the procedural deficiencies and impropriety under which most of the parties labored after the pleadings-relief issue emerged from the trial court's grant of the deed-priority motion. *See id.* at 745 ("When, as here, a trial court has rendered an interlocutory partial summary judgment, parties . . . cannot relitigate issues that are necessarily laid to rest by that judgment unless the trial court later sets the judgment aside in whole or in relevant part.").

As we have said, it is well-established that trespass to try title is generally not the appropriate action to be asserted when nonpossessory interests, including royalty interests, are at issue. *See Lance*, 543 S.W.3d at 734–37; *Lockhart*, 621 S.W.3d at 100; *Glover*, 187 S.W.3d at 210; *T-Vestco Litt-Vada*, 651 S.W.2d at 291.

In this case, by the time the Dean-party Appellees moved for summary judgment on their title claims, it was apparent that most of them were claiming their entitlement to "nonpossessory interests." Despite this, and the many arguments raised by Driver that touched on (1) whether the Dean-party Appellees had asserted a proper cause of action, (2) the related deficiencies associated with the trial court's previous deed-priority order, and (3) the corresponding issues concerning the raised affirmative defenses such as adverse possession, the Dean-party Appellees failed to cure their pleading and procedural deficiencies that had become apparent. Interestingly, in their appellate brief, which Devon and the Birds parties joined, SH Permian now states the opposite of what it originally pleaded and claimed in the trial court, that "[t]he appropriate claim to determine SH Permian's interests is a

declaratory judgment" and "a trespass to try title claim was not appropriate for SH Permian's first motion [the deed-priority motion]."

Devon's motion for summary judgment on title requested declaratory relief only. However, Devon's motion expressly relied on the trial court's deed-priority orders which, as we discussed above, were grounded in trespass to try title pursuant to the pleadings and supplemental motions filed by SH Permian and joined by Devon. By hitching its wagon to SH Permian's filings, Devon was bound by the same summary judgment orders on deed priority as SH Permian. *See* TEX. R. CIV. P. 58. Notably, Devon never nonsuited or disavowed its trespass-to-try-title claim in any of its amended cross-claims—in fact, its fifth amended cross-claim asserted a trespass-to-try-title claim that Devon owned "an undivided 4% of 3/16ths floating NPRI in the Property." Devon also joined SH Permian's fourth amended cross-claim and the motions for reconsideration and leave to file that preceded it, further buttressing the position that Devon had fully hitched its wagon to SH Permian's path. Consequently, Devon's motion for title and the order granting it are fatally flawed by the same procedural deficiencies that stem from the trial court's deed-priority orders and the filings that are related to it. Thus, for the reasons stated, the final judgment in favor of Devon is erroneous and not supported by the pleadings and must be set aside.

The Birds parties claimed and were awarded "floating" royalty interests. SH Permian and Vital claimed mineral interests stripped of every attribute except the right to receive royalty. All of these interests were awarded to them based on trespass to try title because the dispositive summary judgments that addressed the parties' affirmative defenses and claims to title all incorporated or relied on the trial court's deed-priority order, which was granted *only* with respect to the trespass-to-try-title claims that emanated from the Dean Deed's priority, as we have explained.

31

The above-described interests are all, without question, "nonpossessory" in nature and cannot be recovered in a trespass-to-try-title action. A mineral interest if stripped of its executive rights and the rights to receive bonuses and delay rentals may still be a mineral interest.[13] *See French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 796–98 (Tex. 1995); *Altman v. Blake*, 712 S.W.2d 117, 118–19 (Tex. 1986). Whether the interest in such cases is a mineral interest or a royalty interest turns on the specific language that is used in the deed that conveys the interest. *See Reed v. Maltsberger/Storey Ranch, LLC*, 534 S.W.3d 51, 56–57, 57–64 (Tex. App.—San Antonio 2017, pet. denied) (extensively surveying Texas courts' decisions on this issue).

In *French*, the interest at issue was stripped of all its attributes except the right to receive royalty. *French*, 896 S.W.2d at 796. Although the supreme court determined from the language of the deed that the interest was a mineral interest, what matters here is that such interests, even when characterized as mineral interests, are "in the nature of a royalty—a mineral interest stripped of appurtenant rights other than the right to receive royalties." *Id.* at 798. We conclude, as we have before, that such an interest, like a royalty interest, cannot support a possessory remedy like trespass to try title. *See Gaskins, Tr. of Van Martin Gaskins Family Tr. v. Navigator Oil & Minerals, Inc.*, 670 S.W.3d 391, 413 (Tex. App.—Eastland 2023, pet. denied); *Richmond v. Wells*, 395 S.W.3d 262, 267 (Tex. App.—Eastland 2012, no pet.); *T-Vestco Litt-Vada*, 651 S.W.2d at 289–90.

---

[13]The five traditional attributes of a mineral interest are: "(1) the right to develop (the right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, [and] (5) the right to receive royalty payments." *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). The supreme court has stated that the right to develop is a correlative right that is conveyed with the executive right unless explicitly reserved. *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 n.1 (Tex. 1995) (citing *Day & Co. v. Texland Petroleum*, 786 S.W.2d 667, 669 n.1 (Tex. 1990)).

The Dean-party Appellees relied on and incorporated the trial court's order on deed priority, which relief was granted to them as to their trespass-to-try-title claims only, in their subsequent motions for summary judgment that challenged the Boston parties' affirmative defenses. They even asserted that they defeated Driver's adverse possession defenses because their interests were nonpossessory. The Dean-party Appellees also relied on and incorporated the deed-priority order in their motions for summary judgment on title, which the trial court granted and incorporated its rulings into its final judgment that awarded them the nonpossessory interests they claimed.

Vital did not adopt SH Permian's pleadings, and it entered the case well after SH Permian's deed-priority motion had been granted. Perhaps recognizing the deficiencies in the prior orders, Vital meticulously avoided incorporating these orders into its motion for title and instead requested that the trial court determine deed priority based on its motion. Whether Vital was bound by the deed-priority order because it "stepped into the shoes" of Pioneer—which had jointly filed the motion on deed priority and the second supplemental motion and acted in tandem with SH Permian during that stage of the litigation—or because it admitted it was bound by and relied on the prior orders in its response to Driver's motion for new trial, we do not believe that Vital can finesse and avoid the flaws in the final judgment. Here, Vital sought and was awarded the same type of nonpossessory, stripped mineral interest as SH Permian, based on its trespass-to-try-title claim. As such, Vital's award in the final judgment suffers from the same deficiencies that we have discussed above.

Vital further argues that Driver did not appeal the trial court's denial of its special exceptions to Vital's cross-claims, and that therefore its argument regarding these issues has been waived as to Vital. Given the exhaustive nature of the

proceedings in the trial court on these issues, including Driver's repeated challenges throughout, we disagree that the issues have been waived as to Vital.

As we have stated, however, we disagree with Driver's assertion that these procedural deficiencies should vest title to the disputed property in them. The failure to establish a right to summary judgment on the procedural ground that trespass to try title does not apply to the Dean-party Appellees does not warrant the entry of a take-nothing judgment against them or the imposition of a similar adverse finding. *See Lance*, 543 S.W.3d at 736–37; *Lockhart*, 621 S.W.3d at 99 n.4; *T-Vestco Litt-Vada*, 651 S.W.2d at 291.

But the foregoing analysis does not apply to Nail Bay because Nail Bay sought and was awarded a mineral interest with possessory rights. Consequently, though the parties are similarly situated and litigated the case in near lockstep, the final judgment as to Nail Bay is properly supported by its pleadings.

Nevertheless, Nail Bay filed a brief and responded to (1) Driver's assertion that, although Driver and Nail Bay are not directly adverse, Nail Bay's interests are "impacted by the interpretation of the source deeds and the ultimate outcome of this appeal," and (2) Driver's prayer that we reverse the trial court's judgment and render judgment in Driver's favor. Nail Bay contends that because Driver has no claim to Section 31, it has no basis to challenge the summary judgment rulings in Nail Bay's favor concerning ownership in Section 31 and thus no justiciable controversy exists between them. *See Paxton v. Longoria*, 646 S.W.3d 532, 538 (Tex. 2022). Nail Bay also argues that neither Driver nor Graham Sons raised a complaint on appeal as to the trial court's summary judgment rulings regarding Nail Bay's ownership in Section 31, and that these unchallenged summary judgment rulings provide an independent basis to affirm the trial court's judgment as to Nail Bay. Finally, Nail Bay also adopts SH Permian's appellate brief and the arguments it raised in opposition to Driver's appellate complaints.

We agree with Nail Bay. Because we conclude that the claims of all parties to this appeal with which Driver does have a justiciable controversy will be remanded to the trial court in their entirety, Driver has no basis to challenge the trial court's final judgment as to Nail Bay because no adversity exists with them. Accordingly, we overrule Driver's issues as they pertain to Nail Bay.

For the foregoing reasons, we conclude that the trial court's final judgment is erroneous and fatally flawed as to SH Permian, Devon, Vital, and the Birds parties because it awards them interests that are neither supported by the claims and causes of action that are specifically advanced by them in their pleadings and motions, nor by the relief granted to them based on those filings. Accordingly, Driver's second issue is sustained insofar as it was error for the trial court to base its final judgment on its deed-priority summary judgment orders and the procedural deficiencies that we have discussed.

## IV. *Devon's Appeal versus McClure and Fina 945*

In this appeal, which is a subplot to what we have addressed above, Devon raises two issues: (1) the trial court erred when it granted McClure's and Fina 945's motion for summary judgment as to Devon's claim for declaratory relief against them, and (2) the trial court erred by granting the motion on grounds that were not expressly presented.

### A. *Background and Analysis*

Although McClure and Fina 945 are operators of a portion of the disputed property, Vital did not join them to the underlying interpleader action. McClure and Fina 945 filed their plea in intervention and sought a declaration as to the proper interpretation of the deeds that affected title to the subject property, which favored the Boston Deed. Devon filed its counterclaim against McClure and Fina 945 and asserted the same claims that it did in its cross-claims against the Boston-party defendants—a trespass-to-try-title claim that Devon owns "an undivided 4% of

35

3/16ths floating NPRI," and a declaratory judgment action that Devon owns "a floating NPRI equal to 4% of 3/16ths of the royalty rates in the current oil and gas leases covering the Property." McClure and Fina 945 later nonsuited their plea in intervention.

Devon filed a motion for summary judgment against McClure and Fina 945 and sought a declaration of its interests in the subject property. Driver responded and objected, as did McClure and Fina 945. After a hearing, the trial court denied Devon's motion.

McClure and Fina 945 subsequently filed a motion for summary judgment against Devon. In their motion, McClure and Fina 945 argued that Devon's trespass-to-try-title claim against them should be dismissed because (1) they were not competing interest holders against Devon and (2) trespass to try title was not the proper theory for which to assert a claim for a NPRI. Devon responded and contended that this motion only addressed its claim against McClure and Fina 945 for trespass to try title, not its claim for declaratory judgment. The trial court disagreed and granted summary judgment in favor of McClure and Fina 945 as to Devon's claims in trespass to try title and declaratory judgment.

Here, McClure and Fina 945 acknowledge that the prayer for relief in their motion only referenced Devon's trespass-to-try-title claim; nevertheless, they contend that any error created by the trial court's summary judgment order is harmless because Devon received the same declaratory relief in the trial court's final judgment that it had sought against McClure and Fina 945. They also contend that harmless error exists because certain exceptions to the general rule—that it is generally error to grant summary judgment on claims that are not addressed in the motion—apply here, namely that the cause of action omitted from the motion is (1) not legally valid, and (2) derivative of the included claim. *See generally G & H Towing v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011) (per curiam) (discussing the

application of the harmless error rule to the trial court's grant of summary judgment). In light of our disposition of the main issues in this case, including those regarding Devon's claims as a Dean-party Appellee, we disagree with McClure and Fina 945 that the admitted error in the trial court's order is harmless.

We have discussed the deficiencies in the relief awarded and granted to Devon in the trial court's final judgment. Based on that analysis, McClure's and Fina 945's first argument is unpersuasive. Moreover, trespass to try title and declaratory judgment actions are not derivative claims in this context. *See Brumley*, 616 S.W.3d at 831–36 (discussing the pleading requirements and the substantive distinctions between trespass-to-try-title claims and declaratory judgment claims). As such, and consistent with our holdings today, we decline to apply either exception raised by McClure and Fina 945 to excuse the admitted error in the trial court's summary judgment order. Accordingly, Devon's issues are sustained.

## V. *This Court's Ruling*

We affirm the trial court's judgment in part, and we reverse and remand its judgment in part. Because the trial court's final judgment is not supported by the pleadings as to SH Permian, Devon, Vital, and the Birds parties and the relief that they requested, we reverse the trial court's judgment as to these parties and we remand their portion of the case to the trial court for further proceedings consistent with this opinion. As to Devon's claim for declaratory relief against McClure and Fina 945, we reverse the trial court's judgment, and we remand these parties' claims to the trial court for further proceedings consistent with this opinion. As to Nail Bay, we affirm the trial court's judgment.

The portion of the trial court's judgment that we have reversed is remanded in its entirety to the trial court for further proceedings consistent with this opinion. In doing so, we note that "[w]hen an appellate court remands a cause, the effect is to remand the cause for a new trial on all the issues of fact, and the case is reopened in

its entirety." *Kinder Morgan Prod., Co. LLC v. Scurry Cnty. Appraisal Dist.*, 637 S.W.3d 893, 919 (Tex. App.—Eastland 2021, pet. denied) (quoting *Graham Sav. & Loan Ass'n, F.A. v. Blair*, 986 S.W.2d 727, 729 (Tex. App.—Eastland 1999, no pet.)); *see also Eagle Supply & Mfg. L.P. v. Landmark Am. Ins. Co.*, 630 S.W.3d 342, 353 (Tex. App.—Eastland 2021, pet. denied) ("Generally, when an appellate court reverses and remands a case for further proceedings, and the mandate is not limited by special instructions, the effect is to remand the case to the lower court on all issues of fact, and the case is reopened in its entirety." (quoting *Simulis, LLC v. Gen. Elec. Cap. Corp.*, 392 S.W.3d 729, 734 (Tex. App.—Houston [14th Dist.] 2011, pet. denied))); *Reynolds v. Murphy*, 266 S.W.3d 141, 148–49 (Tex. App.—Fort Worth 2008, pet. denied).


W. STACY TROTTER
JUSTICE


June 12, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[14]

Williams, J., not participating.

---

[14]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.